ROBERTS v. CHASE et al.—166 S. W. (2d), 641.

Middle Section.   February 16, 1942.

Petition for Certiorari denied by Supreme Court, December 5, 1942.

J. G. Lackey and R. C. Boyce, both of Nashville, and Elmore Cohen, of West Palm Beach, Fla., for appellant.

Samuel N. Harwood, of Nashville, for appellees.

FELTS, J.   Mary Rice Roberts, widow and ancillary administratrix of M. S. Roberts, deceased, filed the bill herein to set aside a deed by which he conveyed to M. S. Roberts, Jr., and Rena Roberts Donnell, his children by a former marriage, $40,000 of mortgages recited to be in the hands of his agent, Irvine G. Chase; and to have an accounting by the agent. E. B. Donnell, husband of Rena Roberts Donnell, was also joined as a defendant.

M. S. Roberts died October 4, 1933, at his home in West Palm Beach, Florida.   He was survived by his widow, the complainant, and their two children, Jack Rice Roberts and James Benton Roberts, and his two children by his first marriage, defendants M. S. Roberts, Jr. and Rena Roberts Donnell.   Excluding the securities in dispute, the only property he left was his residence worth about $4,000, a farm worth about $3,000, shares in Gray and Dudley Company worth $2,700, and some lots worth $300 or $400.   He left a will dated April 22, 1924, the same day the deed was signed.   The will directed the payment of his debts, gave the rest of his estate equally to his wife and their two children, and named M. S. Roberts, Jr. as executor and trustee without bond.

Both the will and the deed of the $40,000 of securities to M. S. Roberts, Jr. and Rena Roberts Donnell were written by her husband, Judge E. B. Donnell, son-in-law and attorney of M. S. Roberts.   Both documents were signed at the attorney's office in the presence of him, Mrs. Donnell, and M. S. Roberts, Jr., and wisnessed by two young ladies employed in the office.   The deed was also acknowledged to be recorded, but was never recorded and was kept a secret from the wife and younger children of M. S. Roberts for nine and one-half years and until after his death.

After his funeral Judge and Mrs. Donnell and M. S. Roberts, Jr., brought the will to complainant's home and read it, but said nothing

about the deed. M. S. Roberts, Jr., executor and trustee, then went through his father's personal papers, and took away such as he desired. A day or two later he came back and told complainant that for want of money she would have to stop her older son from school; and, on being asked about the $40,000 her husband had invested in Nashville, he said that belonged to Mrs. Donnell and himself. But it was not until after she had come to Nashville and had two or three meetings with Chase and M. S. Roerts, Jr. that she finally learned about the deed. It was as follows:

"Whereas, M. S. Roberts of Palm Beach County, Florida, is the owner and holder of certain mortgages amounting in the principal sum of Forty Thousand ($40,000.00) Dollars now in the possession of his agent, Irvine G. Chase, in Nashville, Tennessee, and is the owner and in possession of other property both personal and real and wishes to be relieved of the necessity of handling personally the said mortgages in the sum of Forty Thousand Dollars held by said Irvine G. Chase and wishes to make some division of his property and estate and to secure certain services from his son, M. S. Roberts, Jr., of Nashville, Tennessee, and his daughter, Rena Roberts Donnell of Palm Beach County, Florida, and

"Whereas, said M. S. Roberts, Jr., is in a position to personally look after and supervise the interest collections on said mortgages and to supervise the investing of any funds derived from the payments of said mortgages and the said M. S. Roberts, Jr., and Rena Roberts Donnell are willing to pay the agreed price for said mortgages and to perform the services hereinafter named.

"Therefore, Know All Men by These Presents, that M. S. Roberts of Palm Beach County, Florida, hereinafter called Grantor does on this the 22nd day of April, A. D., 1924, for and in consideration of the sum of One Dollar and other good and valuable considerations to him in hand paid, the receipt whereof is hereby acknowledged, and for the further consideration of love and affection and the services hereinafter set out, grant, bargain, sell, release and assign unto M. S. Roberts, Jr., and Rena Roberts Donnell, hereinafter called the Grantees, all of those certain mortgages, securities and investments in the sum of Forty Thousand Dollars share and share alike now held in the care of Irvine G. Chase of Nashville, Tennessee. A list and statement of said mortgages are hereto attached marked Exhibit 'A' and made a part of this contract and agreement.

"The sale, conveyance and assignment made by these presents is made subject to the following conditions and provisions, to-wit:

"1st: The grantees shall keep the said principal sum invested in good, safe first mortgage securities and shall account to the Grantor on each interest payment period the net interest of not less than six per cent per annum realized from said mortgage and securities during the life time of the Grantor. It is understood and agreed

that it is the desire of the Grantor that the said principal sum shall be handled by the Grantees through Irvine G. Chase in substantially the same manner that it has been handled heretofore by the Grantor.

"2nd: It is understood and agreed that at the death of the Grantor the trust under this deed is released and ceases to bind the Grantees and the said property, mortgages and securities herein conveyed shall at that time be free of all restrictions and trusts.

"3rd: It is understood and agreed that no portion of the principal sum of the mortgages and securities herein conveyed shall be used during the period of this trust agreement for any purpose whatsoever save to invest as herein provided.

"The parties hereto do by these presents bind themselves, their assigns, successors, legal representatives, executors and administrators.

"In Witness Whereof the parties hereto have set their hands and seals on the day and year first above written.

"(Signed)    M. S. Roberts                    (Seal)
"(Signed)    M. S. Roberts, Jr.               (Seal)
"(Signed)    Rena Roberts Donnell             (Seal)

"Signed, sealed and
delivered in the
presence of:
"(Signed)    Sadie Porter
"(Signed)    Margaret Baggs

"State of Florida        }
"Palm Beach County       }

"Before the undersigned, a Notary Public, personally came M. S. Roberts, Sr., M. S. Roberts, Jr., and Rena Roberts Donnell to me well known to be the individuals described in and who executed the foregoing instrument, and they did acknowledge before me that they executed the same for the purpose therein expressed and asked that it be recorded.

"In Witness Whereof I have hereunto set my hand and official seal this the 22nd day of April, A. D., 1924.

"(Signed)                                Sadie Porter
"Notary Public
"My commission expires Feb. 7th 1925."

Just after signing this deed, M. S. Roberts executed the will, which was as follows:

"State of Florida        }
"Palm Beach County       }

"Know All Men by These Presents: That I, M. S. Roberts of Palm Beach County, Florida, being of sound mind and retentive memory, do on this the 22nd day of April, A. D. 1924, make this my Last

Will and Testament, revoking all former wills and codicils by me made and direct the following disposition of my property:

"First Item: I direct that all of my just debts be paid out of the first funds realized from my estate.

"Second Item: All the balance, remainder and residue of my estate I give, devise and bequeath unto my wife, Mary Rice Roberts, and to my two children, Jack Rice Roberts and James Benton Roberts, share and share alike. It is well understood by my two oldest children, M. S. Roberts, Jr., of Nashville, Tennessee, and Rena Roberts Donnell of Palm Beach County, Florida, that I have made other provisions for them and that they are not forgotten in this will, but are especially not intended to take anything under this will.

"Third Item: I name and appoint my son M. S. Roberts, Jr., of Nashville, Tennessee, as Executor and Trustee of my estate and direct that he be not required to give bond.

"Fourth Item: I direct that my Executor and Trustee hold in tact as nearly as it may be done the whole of my estate until my youngest child shall become twenty-one years old. At that time the aforesaid distribution shall be made. My Executor and Trustee is given full power and authority to manage and handle my estate, but no power and authority to sell and transfer real estate. He shall deliver to my wife, Mary Rice Roberts, all of the net earnings of my estate until the distribution is made as herein provided.

"In Witness Whereof I hereunto set my hand and seal on the day and year first above written declaring this to be my Last Will and Testament.

"(Signed)   M. S. Roberts   (Seal)

"We, Sadie Porter and Margaret Baggs in the presence of each other and in the presence of the Testator, M. S. Roberts, and at his request, have hereunto signed our names as witnesses to this instrument containing two typewritten pages, which instrument the said M. S. Roberts declared to us to be his Last Will and Testament.

"(Signed)   Sadie Porter
            Name

"West Palm Beach, Fla.
            Address

"(Signed)   Margaret Baggs
            Name

"West Palm Beach, Fla.
            Address."

M. S. Roberts, Jr., executor and trustee under the will, declined to offer it for probate or to renounce his trust. Judge Donnell, who acted as his attorney and who had written the will, said "there was no particular reason for it to be probated," and advised him not to probate it. But when it was probated in Palm Beach County,

Florida, upon the petition of a guardian for Jack Rice Roberts and James Benton Roberts, minors, M. S. Roberts, Jr., appeared and qualified as executor. The widow dissented from the will and elected instead to take her dower, which by the law of Florida is one-third of the whole estate, both the realty and personalty.

She and her two children, suing by her as next friend, brought suit in Palm Beach County, Florida, against M. S. Roberts, Jr., as executor and individually, Mrs. Donnell, and her husband, seeking to have the securities declared part of the estate and to require the executor to account for them. M. S. Roberts, Jr., declined to appear individually and appeared only as executor. Their defenses were that the securities were in Tennessee and beyond the jurisdiction of the court; and that M. S. Roberts delivered the deed to the grantees April 22, 1924, and then ''or very soon thereafter'' transferred and delivered the securities to them, and they delivered such securities to Irvine G. Chase, as their agent, in Nashville, Tennessee, and he had ever since been holding and managing the securities for them, according to the terms and the trusts set forth in the deed. While the suit was pending, M. S. Roberts, Jr., resigned as executor. Mary Rice Roberts was appointed administratrix with the will annexed. On April 19, 1938, the suit was withdrawn and dismissed without prejudice.

Mary Rice Roberts was appointed ancillary administratrix of the estate of M. S. Roberts, deceased, by the County Court of Davidson County, Tennessee; and on June 14, 1938, she brought the present suit. The grounds of attack upon the deed were that it was without consideration, never became a completed contract, neither it nor the securities were ever delivered to the grantees or to anyone for them; that it was unenforceable as a sale or contract to sell under both the Florida and the Tennessee statutes of frauds regulating contracts to sell and sales of personalty; and that it was procured by undue influence and a breach of a confidential and fiduciary relation existing between the grantor, the grantees, and his attorney, E. B. Donnell.

Defendant E. B. Donnell prevailed upon a demurrer that no relief was prayed against him. The other defendants admitted the fiduciary relation, but denied the charge of undue influence or breach of that relation. Responding to this charge of the bill, their answers said:

''These defendants admit that, at the time of the execution of the said trust instrument, the said M. S. Roberts, Sr., was getting up in years, and that he had considerable confidence, and placed confidence and trust, in his two children, the defendants, M. S. Roberts, Jr., and Rena Roberts Donnell; and that he frequently visited his said daughter, who lived in the same town with them (him); and that his said son would visit the deceased about once a year, and that the deceased would go to Nashville to visit the son for a few days each year.

"The defendants admit that said M. S. Roberts, Sr. consurted with his oldest son and his daughter about his business affairs; and that, as a result of the parent and child relationship, and of such confidence and trust, there was a fiduciary relationship existing between the deceased and said defendants.

"These defendants deny that the deceased signed said contract, . that is, said trust instrument, while acting under the influence and advice of said two defendants.

"These defendants deny that, while said trust instrument was signed, and was prepared in the office of the defendant, E. B. Donnell, who was a son-in-law of the deceased, and that his said son-in-law was a lawyer in West Palm Beach, Florida, said trust instrument was the result of the undue influence of said defendants exerted on said deceased."

These answers, which were sworn to but the oaths to which had been waived, also stated that M. S. Roberts executed the deed April 22, 1924, and "a few days thereafter" delivered it and the securities to Irvine G. Chase, as agent or trustee for the grantees, and that Chase, as such agent or trustee, thereafter continuously held such securities and "administered said funds in accordance with the provisions of said trust instrument."

The cause was heard orally according to the forms of chancery. The chancellor found and decreed that the instrument was a completed sale and conveyance of the securities in trust to M. S. Roberts, Jr., and Rena Roberts Donnell for both a valuable and a good consideration; that it was not procured by undue influence; that it was not within the statutes of frauds; that the securities were freed of all trusts and restrictions upon the death of M. S. Roberts; that no part of them passed to his estate and his widow was not entitled to dower therein; and that the bill be dismissed. Complainant's motion for a new trial was overruled. She saved a bill of exceptions and appealed.

She has assigned numerous errors, which present four main propositions: (1) the deed was insufficient, as a writing under the statutes of frauds, to include and convey the securities in controversy, and oral evidence was not admissible to supply such insufficiency; (2) the deed never became a completed contract, neither it nor the securities were ever delivered to the grantees or to anyone for them; (3) they failed to rebut the presumption of the invalidity of the deed which arose from the admitted fiduciary relation; and (4) appellant, as administratrix, is entitled to recover the securities or their value, and, as widow, is entitled to one-third thereof as dower under the law of Florida.

From the evidence we find these facts: M. S. Roberts for many years lived in Nashville and engaged in the produce business. About 1915 he retired from that business and went to Florida to live. Over a period of many years while he was in business in Nashville he deposited

his savings with a real estate firm to be loaned at interest on mortgages on real estate. At first this firm was R. W. Turner and Company; it was later changed to W. W. Dillon and Company, and W. W. Dillon became its sole owner. Defendant Irvine G. Chase was an employee of the firm in charge of its mortgage loan department. The total amount of the deposits by M. S. Roberts was $40,000. There were several other depositors. All of the deposits were commingled, and loaned by W. W. Dillon and Company on notes secured by mortgages or deeds of trust on real estate, the notes being payable to the order of the makers or ''Ourselves'' and endorsed by them in blank, so as to make the notes negotiable by the company. It treated the notes as its own, collected the interest thereon and the principal when due, renewed the loans or made other loans, foreclosed on defaults, looked after the mortgaged property, and managed all details in connection with the loans. The company would account to each depositor by giving him its checks in payment of annual or semi-annual interest or principal withdrawn by him.

On August 1, 1924, M. S. Roberts withdrew $3,000. This was for a ''deal in Florida,'' and he expected soon to ''turn it over'' and put the money back. He signed a note for $3,000, payable to the order of ''W. W. Dillon & Company, Agents,'' but left its maturity blank. And the company reduced his account from $40,000 to $37,000. The deal, however, proved a disappointment, and he never put back the money; and, while the company still kept the note, it continued to carry his account as $37,000.

An audit of the books of W. W. Dillon and Company on July 30, 1927, showed that it had 35 depositors whose deposits totaled $92,304.-29, one of them being ''M. S. Roberts, Sr.'' whose account was $37,-000. These books carried these deposit accounts under the head ''Accounts payable-Trust funds'' but as debts of the company to the depositors and the mortgage loans as assets of the company. In August, 1927, Chase wrote M. S. Roberts that he was severing his connection with W. W. Dillon and Company and asked Roberts to let him take over Roberts' account from Dillon to his new business. Roberts agreed to let him do this. In the same way he induced six others to let him take over their accounts from Dillon. The taking over of these seven accounts was handled in this way: Dillon turned over to Chase 45 loans, with the notes and deeds of trust evidencing and securing the loans, totaling $74,898.80, to represent the seven accounts taken over by Chase, which totaled $74,824.77; and Dillon also paid Chase the interest on these accounts which had accrued between the date when Dillon had last paid the interest to the depositors and the date when Chase took over the accounts, September 6, 1927. A list of these 45 loans was made and Chase signed a receipt at the bottom of the list as follows:

"Received the above notes of W. W. Dillon & Company this September 6th, 1927.

"(Signed)   I. G. Chase."

Chase also signed a receipt for the interest paid him by Dillon on the accounts, among which was the account of "M. S. Roberts, Sr." for $37,000, as follows:

| "Mrs. Ada Adison, | $ 6,000.00 | Interest 2 Months — 6 days | $ 66.00 |
| Mrs. Mary Gault, | 5,614.50 | "  Sept. 6/27 | 62.70 |
| W. H. Goodpasture, | 4,119.75 | "  Sept. 6/27 | 44.00 |
| M. S. Roberts, Sr., | 37,000.00 | "   "    " | 407.00 |
| Mrs. Annie Spain, | 4,835.00 | "   "    " | 54.17 |
| Est. Jas. Palmer, | 15,800.00 | "   "    " | 163.05 |
| Mrs. Bates Green, | 1,455.52 | "   "    " | |
| | $74,824.77 | | $796.92 |

Received of W. W. Dillon & Company $796.92, accrued interest to September '6th, 1927 on above accounts, this September 9th, 1927.

"(Signed)   I. G. Chase, Agt."

Thus Chase received from Dillon the lump sum of $74,898.80 in mortgage notes and $796.92 in money as representing the lump sum of the seven accounts, $74,824.77. These notes, being negotiable in the hands of Dillon, passed to Chase by delivery so as to make him the holder of them. Thereafter he handled them as his own, put all monies collected on them in his "personal account" in bank, and gave his checks on this account to M. S. Roberts in payment of the semi-annual interest on $37,000.

When the deed was signed April 22, 1924, it was not delivered to the grantees. Nor was there any list of the mortgages made or attached to the deed as Exhibit "A." Obviously, the draftsman was unaware of the fact that the deposits were not with Chase but with Dillon; but it is difficult to see how M. S. Roberts could have been unaware of this fact, because for years he had been receiving Dillon's checks in payment of the semi-annual interest. There was no "price" or consideration paid by the grantees for the conveyance of the $40,000 in mortgages, except $1, which M. S. Roberts, Jr., says "in this instance was paid."

The testimony for defendants was that M. S. Roberts delivered the deed to Chase in October, 1924; that Chase "accepted the trust under said agreement and agreed to act and account as agent and trustee thereunder;" that he made a list of the mortgages as Exhibit "A," tied the list, the deed, and the mortgages together in a bundle, kept them so thereafter, and administered the trust funds according to the terms of the deed or trust instrument; and that M. S. Roberts, Jr., on behalf of himself and his sister, "religiously" performed the "services," the consideration for the conveyance, by supervising Chase's

management of the funds and accounting, through Chase as their agent, to M. S. Roberts for the interest, according to the terms of the deed.

Opposed to this testimony, however, were many circumstances tending to show that, if M. S. Roberts delivered this deed to Chase, he did so with the intent that Chase should hold it as his agent and subject to his control; that he never relinquished such control but continued to treat the securities as his property and Chase as his agent, accountable alone to him for handling the securities; and that Chase, in his dealings with M. S. Roberts, likewise continued to recognize himself as agent of M. S. Roberts and the securities as belonging to M. S. Roberts. This testimony and these circumstances will be further referred to.

On April 22, 1924, when the deed and the will were signed, M. S. Roberts was 73 years of age, and of meager education, never having gone beyond the third grade. He had given his two older children a high education and a good start in life. M. S. Roberts, Jr., had finished at Vanderbilt University, was 40 years of age, and was a partner in one of the leading firms of architects and engineers of Tennessee; and M. S. Roberts had given him an automobile and a $5,000 paid-up insurance policy. Rena Roberts Donnell was 43 and her husband, Judge Donnell, was the same age. M. S. Roberts had helped him through the law school and had given him at least $5,000. He was then a member of a leading law firm in Palm Beach. M. S. Roberts was living with his wife and their two little children, one five and one-half years old and the other only six months old. There had never been any trouble between him and his wife and he was always tender and affectionate toward her and these children. Neither the mother nor the children had any means of support except from him. The bulk of his property was the $40,000 with Dillon. He had no other source of income or means of providing for the support of his wife and the support and education of their young children.

Judge Donnell undertook to testify that no influence was exerted on M. S. Roberts to induce him to sign the deed, but this statement was excluded. M. S. Roberts, Jr. and Rena Roberts Donnell were permitted, over appellant's objections, to testify that they never spoke to their father about the deed. M. S. Roberts, Jr., however admitted he did talk to his father about changing his will. He had made a will some years before, naming M. S. Roberts, Jr. executor, had gone over its provisions with him, and entrusted it to him to keep. Its provisions were not shown, but M. S. Roberts, Jr. testified that it referred to "his (M. S. Roberts') youngest son, and he had just had another son born, and therefore it would have cut the oldest son out of the will." So the oldest son, M. S. Roberts, Jr., took this will from Nashville to Palm Beach to return it to his father "for his consideration as to whether or not he wanted to change it;" and this was the

occasion of their meeting at the office of Judge Donnell when the deed and the will were made.

■■ In their attack on the deed counsel for appellant invoke both the law of Tennessee and the law of Florida. They argue that, for reasons hereinafter considered, the deed is invalid under the law of Tennessee, but that in any event under the law of Florida the deed is a fraud upon appellant's right of dower in the securities. We think all questions as to the validity of the deed must be determined by the law of Tennessee. It is true that the domicile of appellant and her husband was in Florida, and the law (Comp. Gen. Laws 1927, sec. 5507) of that state entitled her to dower in personalty owned by him in this state at his death (Restatement, Conflict of Laws, secs. 301-303, 306-308; see Younger v. Gianotti, 176 Tenn., 139, 138 S. W. (2d), 448, 128 A. L. R., 1413); but whether he had made valid conveyance of it, so as to leave in him nothing to which her right of dower could attach, is to be determined by the law of this state. The securities were at all times in Tennessee; and the rule now generally accepted is that the validity of a conveyance of chattels or negotiable securities is determined by the law of the state where they are at the time of the conveyance. United States v. Guaranty Trust Co., 293 U. S., 340, 55 S. Ct., 221, 79 L. Ed., 415, 95 A. L. R., 651; Hutchison v. Ross, 262 N. Y., 381, 187 N. E., 65, 89 A. L. R., 1007; Restatement, Conflict of Laws, secs. 255-258, 261, 262; 11 Am. Jur., 355; 15 C. J. S., Conflict of Laws, sec. 18, pp. 929-931.

(1) Appellant insists that the securities were "choses in action of the value of five hundred dollars or upwards," within section 7197 of the Code of Tennessee, section 4 (subsec. 1) of the Uniform Sales Act; that, to be sufficient as a "writing" under this statute, the deed must have described the securities conveyed with such certainty that they could be identified without the aid of oral evidence; and that it failed to do this and oral evidence was inadmissible to supply this deficiency.

The description of the securities conveyed by the deed was "all those certain mortgages, securities and investments in the sum of Forty Thousand Dollars . . . now held in the care of Irvine G. Chase of Nashville, Tennessee. A list and statement of said mortgages are hereto attached marked Exhibit 'A' and made a part of this contract and agreement." Evidence for appellant was that the $40,000 had been deposited by M. S. Roberts not with Chase but with Dillon; that Chase was merely an employee in charge of Dillon's mortgage loan department; and that Dillon had commingled this $40,000 with the funds of other depositors and loaned commingled funds on mortgage notes taken in such form as to constitute himself the legal holder of them. After appellant had adduced this evidence defendant Chase, as a witness for himself and the other defendants, testified that he had physical possession and custody of the mortgages representing

M. S. Roberts' $40,000; that about October 1924, M. S. Roberts delivered the deed to him and he accepted the trust and agreed to act and account as trustee under the deed; and that he made a list of the mortgages as Exhibit "A," kept the list, the mortgages, and the deed tied together in a bundle, and administered the trust according to the terms of the deed. Judge Donnell testified that Chase showed him the list and the bundle of papers on two occasions after October, 1924, and before the death of M. S. Roberts; and M. S. Roerts, Jr. said he had often gone over the list and the papers with Chase during this period.

At the close of defendants' evidence in chief counsel for appellant moved to exclude the deed as evidence, and to exclude all parol evidence introduced by defendant in an attempt to set up Exhibit "A," and all parol evidence introduced by them in an attempt to show that the notes received by Chase from Dillon on September 6, 1927 "were the 'securities, investments and mortgages,' or the proceeds thereof, referred to in the so-called 'trust agreement.'" The substance of the grounds of these motions was that the deed and the parol evidence were inadmissible under the statute of frauds because the competent and relevant proof showed that on April 22, 1924 (the date of the deed) and on until September 6, 1927, the notes and mortgages were owned, possessed, and controlled by Dillon, and were not the property of M. S. Roberts and were not in the custody or care of Chase; and there were no mortgages, securities or investments of M. S. Roberts in the hands of Chase and nothing which answered the description in the deed and nothing which could pass under the deed; that M. S. Roberts had nothing more than a debt against Dillon for the $40,000 he had placed with Dillon; and that the description in the deed was insufficient to include and convey this debt.

The chancellor overruled these motions and his action is assigned for error by appellant. We think the evidence sought to be excluded was admissible and the chancellor's action in overruling the motions was correct. The evidence for appellant was that the securities in suit were not the same as those described and included in the deed for conveyance; while the evidence for defendants, which was sought to be excluded, was that the securities in suit were the same as those described and conveyed by the deed. We think the argument of counsel for appellant overlooks the distinction between the admissibility and the credibility or weight of evidence. Evidence otherwise admissible is not rendered inadmissible and subject to be excluded because it is opposed by contrary evidence or because the triers of fact may find that such contrary evidence preponderates against it. 1 Wigmore on Evidence (3 Ed.), secs. 28, 29, pp. 408-412; Pickard v. Berryman, 24 Tenn. App., 263, 142 S. W. (2d), 764; cf. Ferry Companies v. White, 99 Tenn., 256, 41 S. W., 583, 38 L. R. A., 427. Nor do we think the description in the deed was insufficient. While parol

evidence cannot supply, it may apply, a description. Dougherty v. Chestnutt, 86 Tenn., 1, 5 S. W., 444; Shultz v. Anderson, 177 Tenn., 533, 151 S. W. (2d), 1068. Upon all the facts there can be no doubt as to what mortgages, securities and investments were referred to in the deed. They were those in which Roberts' $40,000 had been invested. It is true that the legal title to them was not in Roberts, but in equity he was the owner of all of them into which he could have traced his money. Bragg v. Osborn, 147 Tenn., 381, 248 S. W., 19; State ex rel. v. Bank of Bristol, 165 Tenn., 461, 55 S. W. (2d), 771; State ex rel. v. Wrenne & Co., 170 Tenn., 131, 92 S. W. (2d), 416. In the absence of any conflicting claims of any other persons who had money with Dillon, we think the deed was sufficient to include and convey whatever right Roberts had in the securities which were held by Dillon and which were subsequently delivered to Chase and which appellant now claims.

(2) A consideration of all the evidence compels the conclusion that, if M. S. Roberts left this deed with Chase, he did so with the intention that Chase should hold it as his agent and subject to his control; that he never relinquished such control or transferred the securities, but continued to treat them as his property and Chase as his agent, accountable alone to him for handling the securities. We have heretofore set forth our findings of fact and cannot undertake here to restate or review the evidence of this voluminous record upon this issue. We, however, enumerate some of the circumstances which show that both Chase and M. S. Roberts continued to deal with the securities as belonging to M. S. Roberts, and which disprove the claim of defendants that the deed was delivered, the securities transferred to the grantees, and Chase accepted the trust under the deed and administered the trust funds according to the terms of the deed.

A short while before the present bill was filed Chase stated to General Loser, who was then one of appellant's counsel but who later withdrew to testify, that M. S. Roberts, when he delivered the deed to Chase, said, "You are amenable to me and to no one else." Also, if Chase had taken charge of the securities as agent for the grantees under the deed in 1924, as he claims, he certainly would not have written M. S. Roberts, Sr. a letter in 1927, asking his permision to take over the securities from Dillon; and Chase's receipt for the securities on September 6, 1927, establishes that he had not taken them over in 1924 under the deed, as he testified. In the latter part of 1932 M. S. Roberts wrote Chase that he wanted his funds to invest them in annuities in Florida. At first Chase could not remember receiving this letter, but on being further pressed, he said, "I will say, 'Yes, I do remember it.' " He replied to M. S. Roberts by letter dated January 2, 1933, sending M. S. Roberts the interest, stating that due to conditions in Nashville it was not possible "to send the other," but that as soon as he could "make somebody pay" he would let M. S.

Roberts hear from him. Chase's testimony that he accepted the trust and managed the funds in accordance with the terms of the deed is shown to be false by his own admission that he never treated the funds as a trust but commingled them with his own funds, and by his admission that, contrary to the deed which required the funds to be kept invested in safe first mortgages, he had invested most of them in second mortgages and in some instances he himself held and foreclosed the first mortgages, thus destroying the security of the second mortgages. He had so managed the funds that he would not even hazard an estimate as to the present value of the securities. The record also shows that M. S. Roberts, Jr. paid no attention to the deed, which stipulated that the principal should be kept invested in good safe first mortgages and that none of it should be used for any other purpose whatsoever; for in 1928, he borrowed $5,000 of this fund from Chase without security, and he never repaid anything, either on the principal or the interest on this loan. It does not appear that M. S. Roberts had any knowledge of this transaction.

So we think the deed never became effective because it was never delivered by the grantor to the grantees or to anyone for them, and the securities were never transferred, during the lifetime of M. S. Roberts. Miller v. Proctor, 24 Tenn. App., 439, 145 S. W. (2d), 807. In that case we recently reviewed the authorities which show that the grantor must have relinquished his right of control over the deed in order to constitute a valid delivery, and we need not now go over them again.

(3) This brings us to appellant's insistence that, irrespective of the question of the invalidity of the deed for want of delivery, it was void because the grantor, M. S. Roberts, was induced to sign it by undue influence and a breach of the fiduciary relation. As we have seen, the chancellor, long renowned for his mastery of equity and his painstaking consideration of causes, found and held that the deed had not been procured by undue influence. With great deference to him, we believe he failed to give due regard to the presumption of the invalidity of the deed which arose from the admitted fiduciary relationship. That equity raises such a presumption is established by all the authorities. Marin v. Marsin, 48 Tenn. (1 Heisk.), 644; Graves v. White, 63 Tenn. (4 Baxt.), 38; Bayliss v. Williams, 46 Tenn. (6 Cold.), 440; Miller v. Proctor, 24 Tenn. App., 439, 446, 145 S. W. (2d), 807, 811; 3 Pomeroy's Eq. Jur. (5 Ed.), secs. 955-957; Trusts and Trustees, by 3 Bogert, sec. 493, pp. 1560-1570. The fiduciary relation may be of any kind which implies confidence, as trustee and beneficiary, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, confidential friend and adviser, indeed, any relation of confidence between persons which gives one dominion or influence over the other. Bayliss v. Williams, supra; Miller v. Proctor, supra. Speaking of a transaction between

parties to a fiduciary relation Mr. Pomeroy says: "While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption." Vol. 3, p. 790.

The presumption of invalidity extends to all dealings between persons in fiduciary and confidential relations, and embraces gifts, contracts, sales, releases, mortgages and other transactions by which the dominant party obtains a benefit from the other party. Trusts and Trustees, by 3 Bogert, sec. 493, p. 1566. The strength of the presumption varies according to the circumstances of each particular case. Where the fiduciary deals directly with his principal, the presumption of invalidity is rebuttable; but where he deals for his own account with his principal's property without the principal's knowledge, the presumption becomes conclusive. 3 Pomeroy's Eq. Jur., sec. 957. In cases where the presumption is rebuttable it can be rebutted only by clear evidence of good faith, full knowledge and of independent action and consent; or by the "clearest and most satisfactory evidence to be adduced, that at the time the transaction took place, no advantage whatever was taken, either of the confidential relations existing in order to obtain a benefit, or of the weakness and frailty of the party from whom the benefit was received." Graves v. White, 63 Tenn. (4 Baxt.), 38, 41. If the transaction purported to be one for a consideration, the burden rests upon the fiduciary to show that the consideration was adequate. Trusts and Trustees, by 3 Bogert, sec. 493, p. 1568. The circumstances of some transactions are such that the only way in which the fiduciary can rebut the presumption of invalidity is by showing that his principal had the benefit of independent advice. Brispham's Principals of Equity (10 Ed.), p. 399; Miller v. Proctor, supra; Peyton v. William C. Peyton Corp. (Del. Sup.), 7 A. (2d), 737, 123 A. L. R., 1482, and the cases collected in the annotation, 123 A. L. R., 1505. Mr. Pomeroy says: "The question as to whether such independent advice is essential is ordinarily determined with respect to the nature of the confidence reposed, the nature of the transaction, and the circumstances in each particular case. In other words, a rule requiring proof of independent advice is ordinarily applied where it is a reasonable requirement and where the circumstances are such that it would be difficult to show the fairness of the transaction without proof of independent advice. The rule is peculiarly applicable in gift cases, particularly where the effect of the gift is to impoverish the donor. Thus a bounty conferred by a cestui que trust upon the trustee will not be sustained unless the trust relation was for the time being completely suspended, and

the beneficiary acted throughout upon independent advice, and upon the fullest information and knowledge (see sec. 958d). Similar holdings obtain in respect of gifts from a client to his own attorney (see sec. 960a). In such cases proof of independent advice is frequently the only way in which the presumption of undue influence or unfairness can be rebutted, and in which it can be shown that the donor was acting independently and with full appreciation of what he was doing'' (Vol. 3, pp. 797, 798).

We think the circumstances of this case are such as to make the presumption of the invalidity of the deed particularly strong; and that the only way in which this presumption could have been rebutted would have been by showing that the grantor had the benefit of competent and disinterested advice before he signed the deed; for there was not only the fiduciary relation between the aged father and his two children, but there was also the fiduciary relation between him and his son-in-law and his attorney, Judge Donnell, who wrote the deed of the $40,000 to his wife and her brother and the will of what was left to the wife and small children of M. S. Roberts. He had given both the older children a high education and a good start in life. He had given M. S. Roberts, Jr. about $5,000, had assisted Judge Donnell through the law school, and had given him at least $5,000. Thus the two older children were established in life and were self-supporting; while the wife and young children of M. S. Roberts had no means of support except from him, and the bulk of his property was the $40,000 of securities.

While the deed contained "colorable contractual expressions" of consideration (Peyton v. William C. Peyton Corp. (Del. Sup.), 7 A. (2d) 737, 123 A. L. R., 1482, 1503), the only thing which passed to the grantor was the $1, if that was paid. At most the consideration was but nominal. Martin v. Martin, 48 Tenn. (1 Heisk.), 644, 654; Ten Eyck et al. v. Whitbeck et al., 135 N. Y., 40, 31 N. E., 994, 31 Am. St. Rep., 809. Especially is this true, in the light of the practical construction by the parties of the deed (Sherman v. Cate, 159 Tenn., 69, 72, 16 S. W. (2d), 25), as shown by the fact that the grantees did nothing as to keeping the funds safely invested or accounting for the interest thereon. For these reasons, a court of equity can regard the deed in no other light than as a gift. Why would a man in the situation of M. S. Roberts take from his wife and his young children what they needed for their support and education and give it to those who were already self-supporting and did not need it? The only reasonable explanation of such a gift is that it was the result of the influence of the fiduciary relation, which existed not only between the father and his two older children but also between him and his son-in-law, attorney, and draftsman of the deed.

There was no attempt to show that he had the benefit of any independent or disinterested advice. We have found no case which would allow such a gift to stand. In Post v. Hagan, 71 N. J. Eq., 234, 65

A., 1026, 124 Am. St. Rep., 997, a deed of a mother to her daughter, made under circumstances quite similar to those in the present case, was set aside because it was not shown that she had the benefit of independent advice. In Martin v. Martin, 48 Tenn., 644, a father's deed of all his property to two of his sons, to the exclusion of his daughters and grandchildren, was set aside. Likewise, in Liles v. Terry, 1895, 2 Q. B., 679, and Barron v. Willis, 1900, 2 Ch., 121, 136, 137, L. R. [1902] App., 271, 286, deeds were set aside because it was not shown that the grantor acted upon independent advice.

In Liles v. Terry, supra, a solicitor drew the deed by which the grantor conveyed property to him in trust for the benefit of herself during her life and at her death for the benefit of her niece, who was the solicitor's wife. The deed was held void because the grantor did not have competent and independent advice in making it. In this case it was said: "It appears to me clear from the cases that no distinction can be recognized between a gift made to a solicitor himself and one made to his wife. It is obvious that a solicitor might benefit largely by a gift to his wife, and there would be a similar temptation to exercise undue influence in respect of such a gift. The wife might make over the property to him the day after it had been given to her For these reasons I think this appeal must be allowed." 2 Q. B., 685.

In Barron v. Willis, supra, a solicitor drew the deed under which his son took a benefit. It was held that it was the solicitor's duty to take care that she did not execute the deed without having independent advice. In this case it was said: "I therefore think that the decision of the Court of Appeal may also be supported upon the ground upon which the learned judges of the Court of Appeal based it, namely, that Mr. William Moore Skinner's son could not take a benefit from the plaintiff without shewing the righteousness of the transaction, or, in other words, that she had independent advice and assistance as to her rights and real position. I therefore concur in the judgment which has been proposed." L. R. [1902] App., 286.

(4) The result of our conclusion is that appellant, as administratrix of M. S. Roberts, is entitled to recover the securities and entitled to an accounting by the agent. This is true irrespective of whether the securities passed under the will of M. S. Roberts, which question upon the construction of the will was not presented below and is not before us. Under the law of Florida appellant, as widow, is entitled to one-third of the value of the securities as her dower.

For the foregoing reasons the decree of the chancellor is reversed and the cause is remanded to the end that appellant may have an accounting by the agent and for further proceedings not inconsistent with this opinion. Defendants, M. S. Roberts. Jr., and Rena Roberts Donnell and Irvine G. Chase, will pay the costs of this appeal. The costs below will abide the outcome.

Crownover, P. J., concurs.

Howell, J., did not participate.