MORRIS *v.* MORRIS *et al.*

(*Nashville,* December Term, 1952.)

Opinion filed April 25, 1953.

Hale & Fogleman, of Marion, Ark., and Ross & Ross, of Savannah, for complainant.

C. L. Boyd, R. R. Haggard and R. R. Haggard, Jr., all of Waynesboro, for defendants.

Mr. Justice Prewitt delivered the opinion of the Court.

This cause involves the right to the proceeds of certain United States Government bonds and certificates of stock of the First Federal Savings and Loan Association of

Waynesboro, Tennessee. The Chancellor held that complainant R. E. Morris, as survivor of Robert L. Morris, was entitled to the entire proceeds of the bonds and also the certificates of stock. Demurrers were filed by the administrator of the estate of Robert L. Morris, deceased, Raleigh Morris, the former guardian of Robert L. Morris, and the U. S. F. & G. Co., surety on the bond of Raleigh Morris, guardian. The three demurrers were overruled by the Chancellor and a discretionary appeal under Section 9038 of the Code was allowed.

Complainant R. E. Morris filed his bill against Roy Morris, administrator of the estate of Robert L. Morris, deceased, Raleigh Morris, the former guardian of Robert L. Morris, deceased, and the U. S. F. & G. Co., surety on the bond of Raleigh Morris, guardian, seeking the recovery as above set out.

It appears that Robert L. Morris was a native of Wayne County, Tennessee but about fifty years ago moved to Crittenden County, Arkansas, where he resided until 1948, when he returned to Wayne County and remained there until his death.

It appears that Robert L. Morris was successful financially and that at the time of his death was worth some thirty or forty thousand dollars in personal property and had very substantial land holdings. It further appears that in December, 1948, the said Robert L. Morris was adjudged a lunatic by the County Court of Wayne County and Raleigh Morris was duly appointed guardian of the person and estate of the incompetent.

While a resident of Crittenden County, Arkansas, said Robert L. Morris purchased twelve Series E United States bonds, issued by the United States for one thousand dollars each, payable to *R. L. Morris or R. E. Morris,* and after the issuance of said bonds, they were

left in a bank at Earle, Arkansas for safekeeping and there remained until shortly after the appointment of defendant Raleigh Morris as guardian of Robert L. Morris. The record discloses that after the appointment of the guardian and while Robert L. Morris was mentally incompetent, the guardian took said twelve bonds from the bank and removed them to Wayne County and then cashed the bonds and received the sum of $10,170.00 as the value at the time of the sale. However, these bonds were cashed in some time before the maturity date. From the proceeds of the bonds, the guardian purchased ten Series E bonds of the par value of $1,000.00 each, and paid for each $750.00 of the proceeds of the sale of the original twelve bonds and had the new bonds made payable to himself as guardian and then invested the remainder of the proceeds in the certificates of stock of the loan company. The complainant R. E. Morris contends that when the guardian cashed in the bonds before maturity and no necessity appearing why he should cash the bonds, as it appears that the ward had twenty or thirty thousand dollars in personal property other than the bonds, that this constituted a fraud on the part of the guardian and evidence that the guardian was trying to deprive the complainant of his rights in these securities.

In so far as the transaction between the guardian and the government of the United States is concerned, no question is made but it is insisted that the transaction in the sale of the bonds by the guardian was a fraud on the rights of the complainant and that the bonds were sold by the guardian for the sole purpose of destroying the rights of complainant in and to said bonds which he would have owned in his own right had the bonds as originally issued remained intact until the death of Robert L. Morris.

█ From a reading of the regulations of the United States Treasury Department, the guardian had a legal right to cash these bonds but when he did so, he was legally bound to invest the proceeds in accordance with the terms of the original bonds and when he failed to do this, he held these securities or proceeds as trustee for the complainant.

█ We are of the opinion that when Robert L. Morris was adjudged insane, this locked the wheels, so to speak, in fixing the rights of the parties. Thereafter, Robert L. Morris was no longer competent to attend to his own affairs. Under the Treasury Department regulations, if complainant R. E. Morris had predeceased Robert L. Morris, the latter would have taken the entire proceeds. So then, we are of the opinion that when Robert L. Morris became insane, nothing could be done with the bonds or the proceeds except that the guardian keep them earmarked just as they were earmarked in the first instance in the face of the bonds.

It is conceded by counsel that we have no case in this state on this point.

█ In *Taylor* v. *Schlotfelt*, 218 Ark. 589, 237 S. W. (2d) 889 it was held that where one co-owner had purchased United States Savings Bonds with intent that his co-owner should receive the proceeds at the purchaser's death, but purchaser became incompetent, the guardian in possession of the maturing bonds could not cash them except for reinvestment of proceeds in the same manner as the original bonds, unless the proceeds were needed to support and care for the incompetent.

We think that the holding in the Arkansas case is sound and that the defendant guardian held these securities as trustee for the complainant.

■ "A lawful act does not become unlawful merely because it may be done by agreement between two parties; *but if the purpose and result of the act is to defeat and destroy a right guaranteed by law to another, the act becomes fraudulent in its nature.*" *Nicholson v. Gulf, Mobile & Northern R. Co.,* 177 Miss. 844, 172 So. 306, 309. See also *Taylor v. McCool,* 183 Tenn. 1, 12, 189 S. W. (2d) 817.

We are of the opinion therefore that the Chancellor properly overruled the demurrer of Roy Morris, Sr., administrator. It might be stated here that the guardian turned over all of the bonds and certificates to the defendant Roy Morris, Sr., administrator of the said Robert L. Morris.

■ Under the demurrer of the guardian and the surety company, it is contended that all of the assets are in the hands of the administrator under bond and that, therefore, there is no further liability on the guardian and his surety. This may be true, but at this stage of the proceedings, we think the Chancellor properly overruled this demurrer on the part of the guardian and the surety.

It results therefore that all the assignments of error are overruled and the interlocutory decree of the Chancellor is affirmed.