# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| IN RE: THE ESTATE OF HOWARD D. SMITH, Deceased. | ) | Gibson Probate No. 10572-P |
| | ) | |
| | ) | |
| SHAUN MURRAY | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Gibson Equity No. 10700 |
| vs. | ) | |
| | ) | |
| JENNIE C. SMITH, Individually, | ) | Appeal No. |
| and JENNIE C. SMITH, as Conservator | ) | 02A01-9503-CH-00055 |
| for Howard D. Smith and WESTERN | ) | |
| SURETY COMPANY, | ) | |
| MANUFACTURER, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

FILED

July 2, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF GIBSON COUNTY
AT TRENTON, TENNESSEE

THE HONORABLE GEORGE R. ELLIS, CHANCELLOR

For the Plaintiff/Appellant:
Scott Kirk
Jackson, Tennessee

For the Defendants/Appellees:
Ted M. Hunderup
Humboldt, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This case involves an alleged breach of fiduciary duty by the conservator of an estate. After a bench trial, the trial court held that the plaintiff had failed to prove a breach of fiduciary duty. We find that the trial court misapplied the burden of proof and reverse the trial court's decision.

The Plaintiff/Appellant, Shaun Murray (Ms. Murray), appeals the dismissal of her suit, in which she sought to recover the value of two Certificates of Deposit from Defendant/Appellee, Jennie C. Smith (Mrs. Smith), individually and as conservator of the estate of Howard D. Smith (Mr. Smith).

Mr. and Mrs. Smith were married in 1967. They maintained separate bank accounts throughout the course of their marriage. Ms. Murray was Mr. Smith's grandniece. In 1980, the Smiths went to attorney Harvey Boswell and executed reciprocal wills. Mr. Smith's will provided that at his death one half of his estate would pass to Mrs. Smith and one half to Ms. Murray. Mrs. Smith's will provided that, upon her death, one half of her estate would pass to Mr. Smith and one half would pass to Melvin L. Watson, Mrs. Smith's son from a previous marriage.

In February of 1984, in an effort to avoid probate, Mr. Smith set up a separate checking account under the names of "Howard D. Smith or Shaun Murray" (the Smith-Murray Account). In addition to this checking account, Mr. Smith had Union Planters National Bank issue two CDS payable to "Howard D. Smith or Shawn (sic) Ella Murray" for the amounts of $20,696.36 and $10,986.98 (CDS).

When Mr. Smith became ill in 1992, Mrs. Smith petitioned the Chancery Court of Gibson County and was appointed conservator of Mr. Smith's estate. Subsequently, Mr. Smith was admitted to Ridgewood Health Care Center, a nursing home. Mrs. Smith then established a conservatorship checking account (Conservatorship Account) by transferring $17,000 from the Smith-Murray Account. The transfer of the proceeds of the Smith-Murray Account to the Conservatorship Account is not at issue in this appeal.

In January of 1993, Mr. Smith's health deteriorated significantly. On January 29, 1993, he was sent by ambulance to the City of Milan Hospital (Hospital). The Hospital called the Smith's housekeeper, Donna Simmons, that day to inform her of the transfer and of Mr. Smith's serious condition. Ms. Simmons gave this information to Mrs. Smith. Mrs. Smith immediately

instructed Ms. Simmons to go to the bank and get the necessary paperwork to cash the CDS. Mrs. Smith completed the documents sent to her by the bank, indicating in the space provided that the CDS were being cashed for "medical reasons." The bank cashed the CDS, and Mrs. Smith placed the proceeds from the CDS into the Conservatorship Account on January 29, 1993. Mrs. Smith did not seek court approval to cash the CDS and place the proceeds in the Conservatorship Account. Five days later, on February 2, 1993, Mr. Smith died.

After Mr. Smith's death, Ms. Murray brought suit alleging breach of fiduciary duty by Mrs. Smith and seeking to recover the value of the CDS from Mr. Smith's estate. At trial, Mrs. Smith indicated that she was eighty-five years old and testified that she transferred the funds because she was overwhelmed by incoming medical bills and because she was fearful that she would not have the resources to pay future medical bills. The proof at trial showed that the expenses charged to the conservatorship totaled $2,678.23. To support Mrs. Smith's testimony about the incoming medical bills, two medical bills totaling $2,123.01 were offered into evidence. Upon Mr. Smith's death, the Conservatorship Account totaled $49,041.08, comprised of approximately $14,000 of the remaining proceeds from the Smith-Murray Account plus the value of the two CDS. This went to Mr. Smith's estate to pass under his will, one half to Mrs. Smith and the other half to Ms. Murray.

After a bench trial, the trial court found that Mrs. Smith had cashed the CDS in order to properly carry out her duties as Mr. Smith's conservator. In its Findings of Fact and Conclusions of Law, the trial court stated:

> 7. As Plaintiff, Shaun Murray carried the burden of putting forth proof that Defendant's actions were outside the scope of her authority and/or improper.

> * * * *

> 9. After observing the witnesses and evidence presented by both Plaintiff and Defendant, and upon reflection of the same, the Court found that the Plaintiff had failed to meet the burden of proof required.

The trial court then dismissed Ms. Murray's claim.

On appeal, Ms. Murray contends that the evidence at trial preponderated against the trial court's finding that Mrs. Smith properly fulfilled her fiduciary duty when she redeemed the CDS. Ms. Murray maintains that the evidence shows Mrs. Smith redeemed the CDS so that their value would be captured in Mr. Smith's estate at the time of his death, because under Mr.

2

Smith's will Mrs. Smith took one half of Mr. Smith's estate.

Our review of this case is governed by Tenn. R. App. P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the evidence preponderates otherwise. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). Where the evidence is conflicting, findings of the trial court are entitled to great weight on appeal because the trial judge had the opportunity to observe the manner and demeanor of the witnesses while testifying. ***Galbreath v. Harris***, 811 S.W.2d 88, 91 (Tenn. App. 1990). On an issue which hinges on the credibility of witnesses, we will not reverse the trial court unless the record contains clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradicts the findings of the trial court. *Id*. On questions of law, our review is *de novo* on the record without a presumption of correctness. ***Marriott Employees' Fed. Credit Union v. Harris***, 897 S.W.2d 723, 727 (Tenn. App. 1994).

In arriving at its decision, the trial court stated that the burden of proof was on the plaintiff, Ms. Murray, to show that Mrs. Smith's actions in cashing the CDS were in breach of her fiduciary duty. The court found that Ms. Murray failed to carry her burden of proof. This was a misallocation of the burden of proof. In a transaction involving a fiduciary relationship, a presumption of invalidity attaches to the transaction once it is shown that the fiduciary benefitted from the transaction. ***Lanius v. Donnell***, 222 Tenn. 58, 76, 432 S.W.2d 659, 667 (Tenn. 1968) (quoting ***Roberts v. Chase***, 25 Tenn. App. 636, 650-51, 166 S.W.2d 641, 650-51 (1942)). In ***Lanius***, the Court stated:

> "While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity; and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption."

*Id.* (quoting ***Roberts***, 25 Tenn. App. at 651, 166 S.W.2d at 650-51 (quoting 3 ***Pomeroy's Equity Jurisprudence*** 790 (5th ed. 1941))). This presumption extends to all interactions between persons in fiduciary and confidential relationships, embracing gifts, contracts, sales, releases, mortgages, and other transactions by which the dominant party acquires a benefit from the other party. *Id.* (quoting ***Roberts***, 25 Tenn. App. at 651, 166 S.W.2d at 651).

3

Moreover, under Tenn. Code Ann. § 34-11-115(c), a fiduciary such as Mrs. Smith must obtain court approval before changing the nature of the fiduciary's investment. Mrs. Smith did not seek court approval before changing the nature of Mr. Smith's investment, that is, redeeming the CDS and transferring the proceeds to the Conservatorship Account. The statutory requirement that Mrs. Smith obtain court approval in advance supports the conclusion that Mrs. Smith had the burden of establishing the validity of the transaction.

Accordingly, Ms. Murray had the initial burden of showing that Mrs. Smith obtained a benefit by redeeming the CDs. This initial burden was met by demonstrating that the value of the redeemed CDS in the Conservatorship Account went to Mr. Smith's estate and that Mr. Smith's will devised one half of his estate to Mrs. Smith. Once the benefit to the fiduciary from the transaction had been demonstrated, the burden then shifted to the fiduciary, Mrs. Smith, to prove the validity of the transaction.

In order to carry her burden of proof, Mrs. Smith would need to show at minimum what she would have been required to prove had she sought court approval of the transactions in advance, as required by Tenn. Code Ann. § 34-11-115(c). The statute does not set forth the evidence a fiduciary is required to produce in order to obtain court approval. Consequently, we look to prior case law for the standard.

An analogous situation is discussed in *Folts v. Jones*, 175 Tenn. 77, 132 S.W.2d 205 (1939). In *Folts*, the guardian of an incompetent ward wanted to cash a life insurance policy for the benefit of his ward's estate, and he sued the named beneficiary of the policy in order to ascertain his legal rights in the matter. *Id*. at 79-80, 132 S.W.2d at 206. The Court pointed out that the beneficiary had no legal right to the benefits of the policy while the insured ward still lived because the policy contained a clause reserving the right to change the beneficiary prior to the death of the insured. *Id*. at 84-85, 132 S.W.2d at 208. Nevertheless, the Court noted that the ward, while still competent, had indicated her desire for the defendant to collect the proceeds of the policy by naming her beneficiary. *Id*. at 85, 132 S.W.2d at 208. The Court then quoted with approval the following from *Corpus Juris*:

> "Before the character of the interest in property, held by a [ward], can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, so far as possible, the interests of the succession, this rule yields to the paramount rule which makes the ward's welfare the first consideration without regard to the rights of those who may have

4

eventually rights to succession."

*Id*.

The Tennessee Supreme Court also required proof of necessity under similar facts in *Morris v. Morris*, 195 Tenn. 133, 258 S.W.2d 732 (1953). In *Morris*, the plaintiff sought to recover the proceeds of several United States Savings Bonds payable to the ward or the plaintiff. *Id.* at 134-35, 258 S.W.2d at 733. The lawsuit was filed against the former guardian of the ward, alleging that the guardian had redeemed the savings bonds and had reinvested the proceeds of these bonds in various instruments made payable to the guardian or the ward. *Id*. at 135-36, 258 S.W.2d at 733. The plaintiff contended that he was entitled to recover the proceeds since the guardian had presented no evidence that cashing the bonds was necessary for the ward's upkeep. *Id*. at 136, 258 S.W.2d at 733.

In determining that the plaintiff was entitled to recover the proceeds of the savings bonds, the *Morris* Court relied on the Arkansas case of *Taylor v. Schlotfelt*, 237 S.W.2d 890 (Ark. 1951), in which the Arkansas Supreme Court held that, where one co-owner had bought United States Savings Bonds with the intention that his co-owner should receive the proceeds when the purchaser died, and the purchaser was later judged incompetent, the guardian in possession of the maturing bonds could not cash them except to reinvest the proceeds in the same way as the original bonds, "unless the proceeds were needed to support and care for the incompetent." *Morris*, 195 Tenn. at 137, 258 S.W.2d at 734. While *Morris* dealt with United States Savings Bonds, which were subject to certain federal regulations, *Morris*, 195 Tenn. at 137, 258 S.W.2d at 733-34, the requirement that the fiduciary demonstrate that the transaction was necessary to protect the interest of the ward is applicable to the facts presented in the instant case. *See Howard v. Imes*, 90 So. 2d 818, 819 (Ala. 1956); 39 *Am. Jur. 2d Guardian and Ward* § 209 (1968).

Accordingly, we hold that Mrs. Smith had the burden to prove that cashing the CDS and transferring the proceeds to the Conservatorship Account was necessary to protect and promote the interest of Mr. Smith. Even if Mrs. Smith's actions were done in good faith in order to carry out her duties as a conservator, establishing necessity was required.

In the instant case, Mrs. Smith failed to show that redeeming the CDS and depositing the proceeds in the Conservatorship Account was necessary to protect and promote Mr. Smith's

5

interest. The undisputed proof showed that there was approximately $14,000 in the Conservatorship Account and only $2,123.01 of outstanding medical bills when Mrs. Smith redeemed the CDS. Thus, the evidence preponderates against a finding that the proceeds from the CDs were necessary to provide care and support for the incompetent. Therefore, we hold that Mrs. Smith breached her fiduciary duty when she redeemed the CDS and deposited the proceeds in the Conservatorship Account.

We next consider whether a constructive trust was created as to the portion of the proceeds from the CDS which passed to Mrs. Smith under Mr. Smith's will. Equity creates a constructive trust as a means of ensuring that justice is done. *Akers v. Gillentine*, 191 Tenn. 35, 39, 231 S.W.2d 369, 371 (1948); *Rowlett v. Guthrie*, 867 S.W.2d 732, 734 (Tenn. App. 1993). A constructive trust typically is imposed on one who

> by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.

*Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. App. 1980) (citation omitted). Tennessee courts have imposed constructive trusts in four specific types of cases. They are (1) where one acquires the legal title to property in violation of an express or implied duty owed to the true owner, (2) where one obtains the title to property through fraud, duress, or some other inequitable means, (3) where one uses a relation of influence or confidence to acquire the legal title to property upon terms more advantageous than those which could otherwise have been acquired, and (4) where one obtains property with notice that another is entitled to that property's benefits. *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. App. 1994); *Gibson's Suits in Chancery* § 383 (7th ed. 1988).

In this case, Mrs. Smith violated her fiduciary duty when she improperly redeemed the CDS and captured their value in Mr. Smith's estate. Consequently, a constructive trust is imposed against Mrs. Smith for the proceeds which passed to Mrs. Smith under Mr. Smith's will, one half the value of the CDS. On remand, Ms. Murray is entitled to receive the full value of the CDS, plus post-judgment interest from the date that Mrs. Smith cashed the CDS, minus the amount, if any, that Ms. Murray received from Mr. Smith's estate that is attributable to the CDS.

The decision of the trial court is reversed. The case is remanded to the trial court for

6

further proceedings consistent with this Opinion. Costs on appeal are taxed to Appellee, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**ALAN E. HIGHERS, J..**

_____
**DAVID R. FARMER, J.**