231 S.W.2d 369 (1950)
AKERS
v.
GILLENTINE et al.
Supreme Court of Tennessee.
February 28, 1948.
*370 Hoyt Bryson, of Woodbury, for appellant.
Sterling S. Brown, Woodbury, for appellees.
BURNETT, Justice.
This cause was heard by the Chancellor on the bill and the demurrer thereto of all defendants except one who filed a plea in abatement. The decree sustained the grounds of demurrer setting up the statutes of limitation of three and seven years and the plea in abatement:
The bill, as amended, alleges in substance that Akers, the appellant here, was a surety on the guardian bond of W.T. Gillentine who was acting as such for his two minor sons. That as such surety he was cast in a suit against the guardian and himself, for default of the guardian, whereby he was compelled to pay in excess of $4,000 by reason of said default. It is further alleged that W. T. Gillentine, the guardian, purchased a piece of real estate, described in the bill, and as a part of the consideration for this real property said Gillentine and his wife Vera Gillentine borrowed $1,250 from a bank to pay on said property. After qualifying as guardian a note of $1,000 belonging to one of his wards came into his hands which note was hypothecated with the bank as collateral security to the $1,250 note held by the bank and when said $1,000 guardianship note was paid the proceeds thereof was applied towards the payment of the $1,250 personal obligation of the guardian and his wife. It is alleged that the wife knew of and acquiesced in the application of the ward's funds toward the payment of this note. In 1939 subsequent to the above detailed events, the guardian deeded the real property to his wife, where the title now rests, subject to a mortgage, the validity of which is not questioned. It is said this conveyance was without consideration and for the purpose of putting it out of the reach of his creditors.
Under the allegations of the bill, which must be taken as true, the appellant had no actual knowledge of the above detailed facts until they were developed in the suit against him and the guardian. That suit was filed in June 1941. The appellant paid the judgment rendered against him, after execution was issued, in April 1947 and instituted the present action within about thirty days thereafter or within six years from the institution of the suit against him.
At the time the instant suit was commenced, W.T. Gillentine and his wife were nonresidents of the state. They are made parties herein by the attachment of the described real estate, payment for part of which is said herein to have been made by the ward's funds. It is on the theory that he is a nonresident and owns no property in this state that W.T. Gillentine files a plea in abatement herein.
This suit is filed on the theory that the surety has been compelled to make good the defalcation of the guardian and that, therefore, he is subrogated to the rights of the ward against those who assisted in causing *371 the defalcation. Also that the proceeds of the $1,000 ward note having gone toward the payment of the attached land that then a court of equity will and should declare a trust therein to this extent.
It is a just and well recognized rule of equity that a fiduciary's surety is entitled to be subrogated to the rights of a ward against a third person who knew or was chargeable with notice that the fiduciary's transaction with him involved a breach of the fiduciary's obligation, State ex rel. Robertson v. Bank of Granville, 17 Tenn. App. 512, 68 S.W.2d 969; Annotation 134 A.L.R. 998 et seq.
Apparently this rule is recognized herein but it is said that any rights this surety might have are barred by the three, six or seven year statute of limitations. No particular code section is plead or cited. We, as was the Chancellor, are left to figure out for ourselves just what code sections are referred to. This argument is that it appears from the bill that the acts of defalcation took place more than three years prior to 1941 and that the date of recording the deed from Gillentine to his wife in 1939 was notice to this surety and that any rights of the surety must date from these dates, i. e., date of defalcation or at most date of recordation of the deed.
Before considering the question of the statute of limitations let us see whether or not a trust would arise if the ward was suing. The alleged factual situation shows the application of $1,000 of the ward's moneys, applied by the guardian, toward a payment on real estate held in the guardian's name which he afterward transferred to his wife who had knowledge of the fact that the ward's moneys were invested therein. It, therefore, appears that the wife, holder of the record title to this real estate, became a trustee for the ward to the extent of the amount of the investment of the ward's money in the property.
Under this state of facts a constructive trust is clearly created. Such a trust is "defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." 3 Bogert, Trusts and Trustees, § 471, p. 3. Of such a situation it was stated by CARDOZO J., in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 389, 122 N.E. 378, 380, thus: "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."
In most of the cases wherein the statute of limitations has been relied on as a defense the courts "have applied the statute from the date of actual or imputed knowledge by the cestui of the wrongful holding." 4 Bogert, supra, § 953, p. 213; Hayne v. Hall's Ex'rs., 24 Tenn. 290, 42 Am. Dec. 427; Haynes v. Swann, 53 Tenn. 560.
We must, therefore, conclude that the property here in question, insofar as the ward's moneys is invested therein, is being held in trust for the appellant and that the statute of limitations begins when he first learned of this situation in June 1941.
This court has heretofore determined that the applicable statute of limitations is that as carried in the present code as section 8600, 4472 of Shannon's Code i.e., the six year statute. We refer to Powell and Smith v. Blake, 161 Tenn. 516, 520, 33 S.W.2d 78, 79, wherein it is said: "From the fact that the fund in question was received by the defendant as trustee, the law implies a contract on her part that she would distribute the fund to those entitled by law. If the action of the beneficiary can be said to be sounded upon this implied contractual obligation, the applicable statute of limitation is clearly section 4472 of Shannon's Code (all editions), which permits the institution of actions on contracts within six years after accrual."
If we were dealing with creditors in the ordinary sense the date of the recordation of the deed would be applicable. Here though we have determined that under the allegations herein a constructive trust is made out. The very foundation of such trusts is an adverse inequitable holding *372 wherein it necessarily follows that one is not bound until he learns of this wrongful holding or could have learned of it by reasonable diligence.
Of course, if and when this comes to a matter of proof, it is necessary in establishing this trust that the proof be "full, clear, convincing and satisfactory." Fehn v. Schlickling, 26 Tenn. App. 608, 175 S.W.2d 37, 40. As far as we are now concerned we have only the bare averments which are true under the state of the pleadings herein.
For the reasons stated we conclude the court below was in error in sustaining the demurrer and the plea in abatement. The cause is remanded for further proceeding consistent with this opinion.