In re KEN GARDNER FORD
SALES, INC., Debtor.

FORD MOTOR CREDIT COMPANY,
Plaintiff,

v.

KEN GARDNER FORD SALES, INC.
and Kyle Weems, Trustee,
Defendants.

No. Civ–1–81–255.

United States District Court,
E.D. Tennessee, S.D.

Aug. 23, 1982.

Smith & Grisham, Richard C. Kennedy, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiff.

Weill, Ellis, Weems & Copeland, H. L. Smith, Smith & Grisham, Thomas E. Ray, Chattanooga, Tenn., for defendants.

MEMORANDUM

FRANK W. WILSON, Chief Judge.

The present action is an appeal from the Bankruptcy Court. In March, 1980, Ken Gardner Ford Sales, Inc. ("Ken Gardner") the debtor, filed a petition in bankruptcy. This proceeding is an appeal by one of the creditors, Ford Motor Credit Company ("FMCC"), from a decision in favor of the trustee in bankruptcy. Two issues are presented. The first is whether the bankruptcy court erred in limiting FMCC's perfected security interest to $1,250,000 instead of the total $1,921,833.06 owed it under Ken Gardner's inventory financing agreement, because of FMCC's failure to pay Tennessee UCC filing tax for a debt in excess of $1,250,000. The second issue is whether the bankruptcy court erred in granting the trustee judgment for voidable preferences in the sum of $211,067.09, the amount by which Ken Gardner reduced its debt to FMCC in the 90 days before bankruptcy.

In 1970 Ken Gardner and FMCC entered into a floor plan inventory financing agreement by which FMCC was given a purchase money security interest in Ken Gardner's inventory. FMCC filed a financing statement on October 23, 1970 and a continuation statement October 15, 1975. Neither statement listed the amount of Ken Gardner's debt. When filing the continuation statement, FMCC executed a sworn statement that the amount of the secured debt was $1,250,000 and paid filing tax on that amount. At that time, Ken Gardner's actual debt was $1,431,375.82 or $181,375.82 more than the sworn amount. Since 1975 Ken Gardner's debt has usually exceeded $1,250,000 and at one point even exceeded $3,000,000 but no additional tax was paid. At the time of bankruptcy, FMCC claimed a debt of $1,921,833.06. Subsequently, on June 16, 1980, FMCC paid a double transfer tax and penalty totalling $27,815.54, an amount sufficient to cover the largest debts Ken Gardner had ever owed under the security agreement.

I—*The Amount of the Secured Debt*

When FMCC filed its continuation statement in 1975, it executed a sworn statement stating that Ken Gardner's debt to FMCC did not exceed $1,250,000 and paid the Tennessee privilege tax on that amount. The sworn statement is not a part of the public record and a financing statement need not state the amount of the secured debt, TCA § 47-9-402(1). However, the amount of tax paid does show on the continuation statement, in this case $1,248. Since it is a fairly simple matter to compute the amount of the secured debt from the amount of tax paid,[1] the bankruptcy judge

---

1. The rate of tax is ten cents (10¢) on each one hundred dollars ($100) of debt secured except the first two thousand dollars ($2,000) of in-

noted that the amount of tax paid could have led other creditors of Ken Gardner to believe FMCC only had a $1,250,000 security interest in Ken Gardner's inventory. The bankruptcy judge did not rest his decision on the misleading effect of the amount of tax paid showing on the continuation statement, but instead on the statutory effect of failing to pay the privilege tax.

The recent Tennessee decision of *American City Bank v. Western Auto Supply,* 631 S.W.2d 410 (Tenn.App.1981) has clarified any doubt that might arise as to the amount of debt secured. In that case the court stated:

"We believe that the effectiveness of any financing statement as an instrument of priority is limited in that respect to the amount upon which the privilege tax is paid. Beyond that it is a nullity." *Id.* at 423.

■ As a result, at the time of bankruptcy FMCC was secured only to the extent of $1,250,000. Subsequently FMCC paid additional taxes pursuant to TCA 67–4015:

"No contract ... by persons engaged in a business or occupation subject to a license or privilege tax ... shall be invalid or unenforceable in the courts because of the failure of such person to have paid such license tax at the time such contract was made or was performed; provided, that such person shall prior to the date of adjudication in the court of original jurisdiction pay double the tax due at the time the contract was made and in addition thereto the penalty prescribed by law."

FMCC contends that payment of the penalty under TCA § 67–4015 after Ken Gardner filed in bankruptcy operated to secure its entire $1,921,833.06 debt. FMCC relies upon 11 U.S.C. § 546(b):

"The rights and powers of the trustee under section 544 ... of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection ...."

This means that:

"If an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 371, S.Rep. No. 95–989, 95th Cong., 2nd Sess. 86 *reprinted in* 5 U.S.Code Cong. & Ad. News 5787 at 6327 & 5872 (1978).

11 U.S.C. § 546(b) usually applies under the UCC to permit the perfection of a purchase money security interest to relate back to defeat an earlier levy by another creditor if the purchase money security interest is perfected within ten or twenty days of the delivery of the property.[2]

■ The Tennessee "escape statute" § 67–4015 does not provide that the late payment of the privilege tax acts to perfect a security interest against an earlier interest holder. The late payment of the privilege tax is necessary to prevent the financing statement from being invalid and unenforceable.

In the non-bankruptcy or prebankruptcy setting, TCA § 67–4015 allows the payment of the penalty tax to perfect the security interest and thus give the creditor superior rights to earlier unsecured creditors. In the

---

debtedness is exempt from tax, TCA § 67–4102 (Item S(b)). An exact computation of the amount of indebtedness secured can be obtained by multiplying the amount of tax paid by one thousand (1,000) and then adding two thousand dollars ($2,000). Thus in the case at hand, $1,248 tax paid, times 1,000 equals $1,248,000. And $1,248,000 plus $2,000 equals $1,250,000, the amount of the secured debt.

**2.** "If the secured party files with respect to a purchase money security interest before or

within twenty (20) days after the collateral comes into possession of the debtor, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing." TCA § 47–9–301(2).

"Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt, ..." TCA § 47–2–702(2)

bankruptcy setting, the trustee's standing as a lien creditor pursuant to 11 U.S.C. § 544 allows him to avoid interests not perfected until after the action has commenced, so payment of the penalty tax under TCA § 67–4015 after the petition in bankruptcy has been filed is of no effect.

Support for this result is found in TCA § 67–4012:

"It shall be unlawful for any person to exercise any of the privileges made taxable by ... this title before complying with the provisions thereof ...."

The FMCC's argument that by payment of the penalty tax upon June 16, 1980, it should be allowed to exercise the privilege of being perfected from the time of its initial filing clearly contravenes the statute by resulting in the exercise of a privilege "before complying" with the taxing provision of TCA § 67–4102 (Item S(b)). This reading of TCA § 67–4012 indicates that perfection occurs at the time of the payment of the privilege tax and penalties and does not relate back to the initial filing. The result is that FMCC is only secured to the extent of $1,250,000 FMCC is unperfected as to the remainder of the debt. Pursuant to 11 U.S.C. § 544 the trustee in bankruptcy will have priority over that unsecured portion of the debt because the trustee takes ahead of unperfected debtors. The decision of the Bankruptcy Court upon this issue will be affirmed.

## II—*The Preferential Transfer Question*

Ninety days before bankruptcy Ken Gardner's debt to FMCC was $2,132,900.15. On the date of bankruptcy the indebtedness was $1,921,833.06. The bankruptcy court said that the reduction in principal debt of $211,067.09 was a preferential payment and decided that FMCC should tender that amount to the trustee for inclusion in the estate. This question turns on the application of 11 U.S.C. § 547(b) which controls the avoidance of preferential transfers and provides:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) *on or within 90 days before the date of the filing of the petition; ...*" (emphasis added)

The transfers in question were either additional new cars delivered to Ken Gardner for which additional indebtedness was incurred or the payment of principal due to FMCC out of the proceeds of automobiles which were actually sold out of inventory and for which the lien was released. Since the Court has found FMCC was only perfected to $1,250,000, 11 U.S.C. § 547(b) applies to the unsecured portion of the debt. FMCC asserts that one or more of the exceptions of 11 U.S.C. § 547(c) apply to its dealings with Ken Gardner and as a result, the reduced principal debt is not a preferential transfer.

The process by which these transfers took place was set out in the Stipulation of Facts, paragraph 4:

"Separate notes were made on behalf of Ken Gardner by FMCC for each vehicle (or group of vehicles) purchased from Ford as they were added to the Ken Gardner floor plan. As each vehicle was sold to a customer, the proceeds of sale, whether from cash payments from the borrowers or from sale of the financing documents, would be deposited to Ken Gardner's general bank account and not a trust account. Within two days of each sale, Ken Gardner was required to forward to FMCC a sum equal to the principal balance of the wholesale cost of the vehicle."

Only the first two exceptions of 11 U.S.C. § 547(c) merit discussion. The first states that the trustee may not avoid under this section a transfer—

"(1) to the extent that such transfer was

"(A) intended by the debtor and the creditor to or for whose benefit such transfer

was made to be a contemporaneous exchange for new value given to the debtor; and

"(B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1).

FMCC maintains that its release of the lien on a vehicle after receiving payment from Ken Gardner within two days of his sale of the vehicle constitutes a contemporaneous exchange. However, release of the lien is not new value, the value is given when Ken Gardner is given credit to purchase a vehicle from Ford Motor Company. The allowance of credit at the time of purchase was not contemporaneous with the payment after a vehicle was sold.

 The second exception states that the trustee may not avoid a transfer—

"(2) to the extent that such transfer was—

"(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

"(B) made not later than 45 days after such debt was incurred;

"(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

"(D) made according to ordinary business terms; ..." 11 U.S.C. § 547(c)(2).

This initially would seem to cover the ordinary payments by Ken Gardner to FMCC every time a vehicle is sold. In fact, this section did allow Ken Gardner to make interest payments to FMCC. According to the legislative history, Congressional intent may have been to cover this situation.

"The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978), U.S. Code Cong. & Admin.News at 5874.

However, Richard B. Levin, a member of the House Judiciary Committee staff that drafted the Code, has indicated that 11 U.S.C. § 547(c)(2) was not intended to cover the type of transaction which is before the Court. Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173, 187 (1979). Other commentary is divided upon the subject. *See* 4 *Collier on Bankruptcy* § 547.38 (adopting Mr. Levin's view) and White & Summers, *Uniform Commercial Code,* 1006 (2nd ed. 1980) (adopting the contrary view). Judicial decisions have been unanimous in interpreting the time at which a debt was "incurred" to be the time when the initial obligation arose, or in this case when Ken Gardner used credit to purchase a vehicle from Ford Motor Company. *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir. 1981), *In re Bowen,* 3 B.R. 617 (Bankr.Ct.E.D.Tenn.1980). As a result, FMCC is unable to fit the reduction in principal debt within the second exception of 11 U.S.C. § 547(c).

 The remaining exceptions are similarly not applicable to FMCC: the purchase money loan exception does not work because of FMCC's failure to perfect more than $1,250,000 of the debt; the new value exception fails because the trustee seeks only the aggregate reduction in the debt; and the exception dealing with inventory, receivables, and proceeds also fails because of the lack of perfection. Thus it appears that the Bankruptcy Court correctly determined that the $211,067.09 was a preferential transfer which could be avoided by the trustee.

The decision of the Bankruptcy Court is affirmed.