35 B.R. 499 (1983)
In re PLM/HOTEL-MOTEL DIVISION, INC., Formerly Glade Hill Townhome Development Co., Inc., Assignee of Knoxville Convention and Tourist Bureau, d/b/a Knoxvisit Housing Bureau, Debtor.
COUNTY-UPTOWN MOTEL, INC. and Prince & Pauper Motel, Inc., Plaintiffs,
v.
PLM/HOTEL-MOTEL DIVISION, INC., Defendant.
Bankruptcy No. 3-82-01829, Adv. No. 3-83-0270.
United States Bankruptcy Court, E.D. Tennessee.
November 10, 1983.
Kennerly, Montgomery, Howard & Finley, Gail M. Good, Knoxville, Tenn., for plaintiff Country-Uptown Motel, Inc.
Kramer, Johnson, Rayson, McVeigh & Leake, James A. Ridley, III, Knoxville, Tenn., for plaintiff Prince & Pauper Motel, Inc.
Lockridge & Becker, P.C., James A. McIntosh, Knoxville, Tenn., for defendant.

MEMORANDUM
CLIVE W. BARE, Bankruptcy Judge.
At issue is whether lodging proceeds initially deposited in the debtor's general bank account but subsequently transferred to a separate account are trust funds in which plaintiffs own the equitable interest, 11 U.S.C.A. § 541(d) (1979).

I
The facts have been stipulated. Plaintiffs are two Knoxville motels which were parties to separate reservation agreements, with different booking agents, for overnight *500 lodging during the 1982 World's Fair. Debtor was the reservation booking agent for plaintiff Prince & Pauper Motel, Inc. and numerous other motels and hotels in the Knoxville area. Property Leasing & Management, Inc. (PLM), an affiliate of the debtor, served as a reservation booking agent for plaintiff Country-Uptown Motel, Inc.
PLM booked a reservation with Country-Uptown for a Florida high school group for either three or four nights, beginning September 19, 1982. After a representative of the group visited the premises of Country-Uptown on September 15, 1982, he informed PLM that the accommodations would not be satisfactory for his group. PLM thereupon offered the services of the debtor, which arranged accommodations for the group at the Prince & Pauper Motel. Net proceeds in the amount of $9,139.65 were paid to the debtor by the Florida group for lodging at the Prince & Pauper.
Country-Uptown was not notified of the switch in lodging for the Florida group. When the president of Country-Uptown contacted Reggie E. Castle, president of both PLM and the debtor, Castle told him monies were available to compensate Country-Uptown but that the Prince & Pauper had a claim for the same funds.[1]
When payment pursuant to its reservation agreement was not received from the debtor, a representative of Prince & Pauper, Ray Brann, promptly made inquiry of the debtor. Brann was advised that payment had been delayed because of the switch between the booking agencies. When Brann thereafter phoned the debtor's attorney, he was told that the funds were on hand and that the debtor would be advised to make payment as soon as the two motels could agree on a disposition protecting the debtor from dual liability.
The lodging proceeds were initially deposited in the debtor's general account, which had a balance in excess of $9,139.65, the amount in issue, at all times material herein. On November 23, 1982, the debtor opened an account in its own name at Valley Fidelity Bank consisting solely of the disputed proceeds. The purpose of the account was to sequester the proceeds until instructions for disposition thereof were received from the two claimants. No other funds received by the debtor have been treated in this manner.
The debtor's chapter 11 bankruptcy petition was filed on December 1, 1982. During or before March 1983, plaintiffs reached an agreement for a division of the controverted proceeds. Their complaint requesting a turnover of the funds by the debtor was filed on March 25, 1983.

II
With exceptions immaterial herein, property of a debtor's estates consists, in part,[2] of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (1979). However, the interest of the estate in property of the debtor is limited to the interest enjoyed by the debtor. Bankruptcy Code § 541(d) recites:
Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
The reservation agreement between Prince & Pauper and the debtor recites in material part:
AGREEMENT made this 21 day of May, 1982, between P.L.M. HOTEL/MOTEL *501 DIV., INC., Booking Agent (hereinafter called "P.L.M.") and Prince & Pauper Motel (hereinafter called "Owner").
WITNESSETH:
In consideration of the mutual promises and covenants herein contained, Owner and P.L.M. agree as follows:
(1) Owner hereby appoints and employs P.L.M. as the sole and exclusive booking agent of Owner's premises (hereinafter called the "Property"), described as follows:
. . . .
(4) P.L.M. shall render to Owner a monthly statement of receipts, disbursements and expenses incurred.
(5) All monies received by P.L.M. for or on behalf of Owner shall be deposited by P.L.M. in a commercial bank. Such funds shall be disbursed by Agent in such amounts and at such times as the same are required to pay for obligations, liabilities, costs, expenses and fees including, without limitation, the compensation of P.L.M. hereinafter provided, arising on account of or in connection with this Agreement. All amounts remaining after the payment of expenses and fees shall be paid over to Owner monthly by the tenth (10th) of the following occupied month.[3]
Plaintiffs contend that the proceeds at issue are trust funds subject to their equitable ownership interest. Although the proceeds were commingled with funds in the debtor's general account, plaintiffs assert that the funds may be traced. Moreover, plaintiffs maintain that the debtor's intention to hold the proceeds in trust for them is "concretely manifested" by the transfer of an amount equivalent to the disputed proceeds from debtor's general account into a new, segregated account consisting solely of the proceeds in issue.
The debtor concedes that it intended to act as a stakeholder when it opened the account at Valley Fidelity on November 23, 1982, with a deposit of the disputed amount. However, the debtor nonetheless asserts that its obligation to the plaintiffs arose previous to the commencement of the case and that the plaintiffs are merely unsecured creditors.
Two decisions under the Bankruptcy Act of 1898 are instructive. In re Morales Travel Agency, 667 F.2d 1069 (1st Cir.1981), involved an attempt by Eastern Airlines to recover the full amount of its claim against a bankrupt travel agency. The business relationship between Morales and the airlines for which it sold tickets was governed by the International Air Transport Association (IATA) Passenger Sales Agreement and resolutions of the IATA. A resolution pertaining to the collection of proceeds provided that the proceeds of sales "shall be the property of the Carrier and shall be held by the Agent in Trust for the Carrier or on behalf of the Carrier, until satisfactorily accounted for to the Carrier and settlement made." Hence, Eastern argued that the proceeds from sales of its tickets were held in trust by the bankrupt, not property of the bankrupt's estate. The First Circuit Court of Appeals rejected Eastern's argument because there was not a genuine trust relationship between the bankrupt travel agency and Eastern. There was no restriction on the bankrupt's use of proceeds from ticket sales; the bankrupt was not required to maintain a separate account for the proceeds. Furthermore, the proceeds were remitted at specified intervals (twice monthly), as opposed to upon either demand or receipt. Significantly the opinion recites:
The use of the word "trust" and the designation of the airline as titleholder, in a contract which is not publicly filed, would not save potential creditors from relying on such assets as . . . a bank account solely in the name of the [bankrupt] agency. (Emphasis added.)
In re Morales Travel Agency, 667 F.2d at 1071. *502 Eastern was merely entitled to an unsecured claim without priority.
The second case, In re Penn Central Transp. Co., 328 F.Supp. 1278 (E.D.Pa.1971), involved a reclamation petition by Greyhound Lines, Inc. Greyhound sought to recover the net unremitted proceeds of bus tickets sold by Penn Central, pursuant to an agency agreement, previous to the filing of its reorganization petition. The agreement between the two transportation companies expressly permitted commingling of the proceeds of bus tickets with funds in Penn Central's general account. Greyhound contended that the proceeds were trust funds. Finding the relationship between Penn Central and Greyhound to be merely that of debtor and creditor, the court dismissed the reclamation petition.
No express trust is created between the debtor and Prince & Pauper by their reservation agreement, which merely requires the deposit of proceeds in a commercial bank. Segregation of proceeds is not required under the terms of the agreement. Also, although a scheme for disbursement of proceeds is recited, no provision prohibiting or restricting the debtor from using the proceeds for purposes unrelated to the agreement is included.
The court must disagree with plaintiffs' attempt to distinguish Penn Central from the instant case on the basis that the debtor in Penn Central was expressly authorized to commingle proceeds. The debtor herein was not restricted by the terms of the agreement from commingling funds and did in fact deposit the proceeds in its general account.
Furthermore, opening a separate account in an amount equal to the sum of the lodging proceeds received from the Florida group did not impress a trust upon the funds. The plaintiffs' claim to the account are certainly not reflected by the records of Valley Fidelity since the account is established in the name of the debtor only with a mere parenthetical "Disputed Accts."

III
The question remains whether the court should find that the proceeds are impressed with a constructive trust. Although the facts of this case do not correspond with the circumstances in which constructive trusts are generally recognized in Tennessee,[4] it is evident from the legislative history of Code § 541 that Congress realized cases would arise in which the imposition of a constructive trust would be appropriate.
Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.
H.R.Rep. No. 595, 95th Cong. 1st Sess. 368, reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6324.
The court, however, declines to recognize a constructive trust in this case. The invitation to do so is less compelling than the example of the medical insurance payment in the quoted legislative history. Unquestionably plaintiff Prince & Pauper ought to be paid for the accommodations furnished. Yet, there is a multitude of other creditors who likewise ought to be paid.
Plaintiffs could have protected their interest if they had established a different procedure creating a genuine trust relationship between themselves and the debtor. Because they failed to do so their rights are no greater than those of other unsecured creditors.
This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.
NOTES
[1] The communication occurred either contemporaneously with the visit of the Florida group or immediately thereafter.
[2] A debtor's estate is also comprised of certain interests acquired postpetition. See 11 U.S.C.A. § 541(a)(3)-(7) (1979).
[3] The provision in the reservation agreement between Country-Uptown and the debtor's affiliate pertaining to the remittance of proceeds differs immaterially.
[4] See Gibson's Suits in Chancery, § 383 (6th ed. 1982).