**In re TINNELL TRAFFIC SERVICES, INC., Debtor.**

**T. Larry EDMONDSON, Trustee, Plaintiff,**

**v.**

**BRADFORD–WHITE CORPORATION, Defendant.**

**Bankruptcy No. 380–00716.
Adv. No. 382–0165.**

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 7, 1984.

T. Larry Edmondson, Nashville, Tenn., Trustee.

Brent S. Gorey, Robert A. Kargen, Philadelphia, Pa., George E. Barrett, Nashville, Tenn., for defendant.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

The trustee has moved for summary judgment, asserting that the defendant, Bradford-White Corporation, has received preferential transfers from the debtor, Tinnell Traffic Services, Inc., in the amount of $53,114.83. The defendant has filed a cross-motion for summary judgment asserting that the funds it received from the debtor were not property of the debtor but were property of the defendant held by the debtor in constructive trust. Upon consideration of the evidence presented, stipula-

tions, briefs of the parties, applicable authority and the entire record, this court concludes that the trustee's motion for summary judgment should be GRANTED and that the defendant's cross-motion for summary judgment should be DENIED.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On February 1, 1978, the debtor and the defendant entered into a contract. The debtor agreed to audit and pay all freight bills it received on behalf of the defendant in return for commission payments. The defendant agreed to reimburse the debtor each week for payments made on its behalf. Pursuant to the contract, the debtor forwarded to the defendant on a weekly basis a list of all freight bills paid for the defendant and all checks drawn to pay those bills. Upon receipt of the list, the defendant would reimburse the debtor by transferring funds to one of the debtor's bank accounts.

On February 22, 1980, the debtor knowingly sent a false freight bill list and invoice list to the defendant. The list and invoice showed that the defendant owed the debtor $53,114.83 for the payment of freight bills when in fact these bills had never been paid. The defendant, unaware that the list and invoice were false, transferred $53,114.83 to a bank account of the debtor at the United American Bank in Nashville, Tennessee.

On February 28, 1980, the debtor advised the defendant that the freight bill list and invoice were false and that the debtor was returning the defendant's money. On March 3, 1980, the defendant received a check drawn by the debtor in the amount of $53,114.83. The debtor's check was drawn on the same account in which the defendant had transferred money to the debtor several days earlier and was honored by United American Bank on March 4, 1980.[1]

---

**1.** From the time the funds in question were credited to the debtor's account until the time when the funds were withdrawn from the debt-

## I.

The court recognizes that in order for summary judgment to be granted, it must determine upon consideration of the entire record that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1000 (M.D.Tenn.1983). In the case at bar, the court has determined that no material facts are disputed.

▮ In order to establish the existence of a preferential transfer pursuant to 11 U.S.C. § 547(b) (West 1979), the trustee must establish the threshold element that the property transferred belonged to the debtor. *Waldschmidt v. Ranier (In re Fulghum Construction Company),* 7 B.R. 629, 631 (Bankr.M.D.Tenn.1980), *aff'd.,* 14 B.R. 293 (M.D.Tenn.1981), *aff'd. in part and rev'd. in part,* 706 F.2d 171 (6th Cir. 1983). See also *Loeb v. G.A. Gertmenian & Sons (In re A.J. Nichols, Ltd.),* 21 B.R. 612, 615 (Bankr.N.D.Ga.1982); *Huddleston v. Chesnut (In re Rector),* 14 B.R. 1008, 1010 (Bankr.E.D.Tenn.1981). *Young v. Nadelson Displays, Inc. (In re Lucasa International, Ltd.),* 14 B.R. 980, 982 (Bankr. S.D.N.Y.1981); 4 COLLIER ON BANKRUPTCY § 547.08 at 547–10 (15th ed. 1983). To determine the debtor's rights in specific property, the court must look to state law. *Bojalad & Company v. Holiday Meat Packing, Inc.,* 30 B.R. 737, 741 (Bankr.W.D.Pa.1983); *Albion Production Credit Association v. Langley,* 30 B.R. 595, 598 (Bankr.N.D.Ind.1983); *Central Trust Company v. Shepard,* 29 B.R. 928, 931 (Bankr.M.D.Fla.1983); *Turner v. Burton,* 29 B.R. 628, 630 (Bankr.D.Me.1983).

In the present case, the defendant alleges that it did not receive property of the debtor's, but merely received a return of its own property. Since the debtor originally acquired the defendant's property by fraud, the defendant argues that the prop-

---

or's account, the account never fell below $53,-114.83.

erty was held by the debtor as a trustee under a constructive trust. Upon an examination of the law of constructive trust in Tennessee, this court is of the opinion that the property transferred was owned by the debtor and was not impressed with a constructive trust.

■ Under Tennessee law, a constructive trust is a "judge-created trust(s) ... which enable(s) a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." *Wells v. Wells,* 556 S.W.2d 769, 771 (Tenn.Ct.App.1977). While Tennessee courts have recognized that constructive trusts may be impressed on property which a party obtained by fraud, the courts have held that constructive trusts are equitable remedies imposed by the court within the court's discretion. *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1014 (M.D.Tenn.1983); *Akers v. Gillentine,* 191 Tenn. 35, 231 S.W.2d 369, 371 (1948); *Browder v. Hite,* 602 S.W.2d 489, 492–493 (Tenn.Ct.App.1980); *State v. Holland,* 51 Tenn.App. 344, 367 S.W.2d 791, 795 (1962); *Fehn v. Schlickling,* 26 Tenn.App. 608, 175 S.W.2d 37, 40 (1943); H. GIBSON, SUITS IN CHANCERY § 383 (6th ed. 1982). Since constructive trusts are judge-created equitable remedies, the trust does not come into existence until imposed by a court of equity. *Memphis Memorial Park v. McCann,* 133 F.Supp. 293, 298–299 (M.D.Tenn.1955); G. BOGERT, THE LAW OF TRUST AND TRUSTEES § 471 (1978).

■ In this case, it is clear that a constructive trust did not exist at the time the debtor transferred the funds to the defendant. Without a judicial decree imposing a constructive trust on the property in question, this court must hold that the property

transferred from the debtor to the defendant was indeed property of the debtor.

## II.

Although this court is convinced that the threshold element of § 547(b) has been met, it is appropriate to consider whether this court should at this time impose a constructive trust on the funds in question and allow the defendant to retain the funds. *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1013 (M.D.Tenn.1983). Upon an analysis of § 547(d) of the Bankruptcy Code and the interests of the parties to this litigation, this court is convinced that a constructive trust should not be imposed.[2]

■ The trustee has the right under § 547(b) of the Bankruptcy Code to avoid the preferential transfers for the benefit of all unsecured creditors.

The policy underlying § 547(b) is to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor" and to discourage creditors from "racing to the courthouse to dismember the debtor during his slide into bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 177–178 (1977) U.S.Code Cong. & Admin.News 1978, 5787, 6138. *Cohen v. Kern (In re Kennesaw Mint, Inc.),* 32 B.R. 799, 805 (Bankr.N.D.Ga.1983). See also *Ray v. Security Mutual Finance Corporation (In re Arnett),* 13 B.R. 267, 269–270 (Bankr.E.D.Tenn.1981) *rev'd. on other grounds,* 731 F.2d 358 (6th Cir.1984).

■ In the case at bar, the debtor engaged in a fraudulent scheme in which approximately 10 to 15 creditors were induced to pay the debtor on the basis of false freight bills and invoices. These defrauded customers are unsecured creditors of this bankruptcy estate. To allow the

---

**2.** This court has in the past reserved the use of the remedy of imposing a constructive trust for cases in which extreme injustices would result. In the *Anderson* case, the court imposed a constructive trust to avoid the gross inequity of depriving a party of its title to land due to a technical defect in the party's deed. *See also County-Uptown Motel, Inc. v. PLM/Hotel-Motel*

*Division, Inc.,* 35 B.R. 499 (Bankr.E.D.Tenn. 1983); *First National Bank of Boston v. Computer Input Services, Inc.,* 33 B.R. 292 (Bankr. E.D. Pa.1983); *Central Trust Company v. Shepard,* 29 B.R. 928 (Bankr.M.D.Fla.1983); *Travelers Insurance Company v. Angus,* 9 B.R. 769 (Bankr.D.Or. 1981).

defendant in this case to receive funds paid to the debtor under a constructive trust theory would be detrimental to these unsecured creditors. This court can find no reason to treat the defendant any differently from all the other defrauded creditors in this estate and will not impose a constructive trust for the defendant's benefit.[3]

### III.

■ Since the trustee has established that the funds in question were property of the debtor, the court must determine whether the trustee has carried his burden with respect to the five essential elements of a § 547(b) preference. *Waldschmidt v. Ford Motor Credit Company (In re Murray)*, 27 B.R. 445, 447 (Bankr.M.D.Tenn. 1983); *Eggleston v. Third National Bank*, 19 B.R. 280, 281–82 (Bankr.M.D.Tenn. 1982). See also *Steel Structures, Inc. v. Star Manufacturing Company*, 466 F.2d 207, 217 (6th Cir.1972).[4] In the case at bar, the court must also consider whether the defendant is entitled to retain the funds in question under either the contemporaneous exchange exception pursuant to 11 U.S.C. § 547(c)(1) or under the business debt exception pursuant to 11 U.S.C. § 547(c)(2). Either of these theories require the defendant to bear the burden of proof in establishing the elements of a § 547(c) exception. *Waldschmidt v. Miracle Motors (In re Haynes)*, 28 B.R. 136 (Bankr.M.D.Tenn. 1983).

**3.** The court recognizes that the Bankruptcy Code has made provisions for defrauded creditors by allowing them to except their debts from discharge. Although this remedy may not be totally satisfactory when a creditor is defrauded by a corporate debtor, the court notes that defrauded creditors may be able to impose liability on the officers of a corporation if the creditors can establish that the officers were aware of the fraud.

**4.** 11 U.S.C. § 547(b) (West 1979) provides in relevant part:
"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

■ Based on the stipulations and the pleadings of the parties, it is clear that the five essential elements of § 547(b) have been established. First, this court has determined that the debtor did not hold the funds in question in a constructive trust; therefore, the defendant did not receive the funds as a trust beneficiary but as a creditor. Second, the parties have stipulated that the defendant received the funds in question as a repayment of funds previously forwarded to the debtor. Third, the transfer took place within 90 days of the date of the filing of the bankruptcy petition. Fourth, the debtor is presumed to have been insolvent pursuant to 11 U.S.C. § 547(f) (West 1979).[5] *Middle Tennessee Marine, Inc. v. I.T.T. Diversified Credit Corp.*, No. 380–02844, Adv.Proc. No. 380–0650 (Bankr.M.D.Tenn., May 1, 1981); *McLemore v. Carson, Ltd. (In re Sealy)*, 34 B.R. 947, 952 n. 5 (Bankr.M.D.Tenn. 1983); *Cohen v. Kern (In re Kennesaw Mint, Inc.)*, 32 B.R. 799, 803 (Bankr.N.D. Ga.1983). Fifth, the defendant, an unsecured creditor, received 100% payment of its debt as a result of the transfer in question. Had this transfer not occurred, the defendant would have received significantly less on its unsecured claim under this Chapter 7 liquidation.

### IV.

■ The defendant argues that the transfer is excepted from avoidance pursu-

(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

     .    .    .    .    .

(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

**5.** 11 U.S.C. § 547(f) (West 1979) states:
"(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

ant to 11 U.S.C. § 547(c)(1) (West 1979).[6] In order to establish a § 547(c)(1) exception, the defendant must prove not only that a substantially contemporaneous exchange for new value occurred but also that the debtor and creditor intended the transaction to be a contemporaneous exchange for new value. *Ray v. Security Mutual Finance Corporation (In re Arnett)*, 731 F.2d 358 (6th Cir.1984); *Ray v. Gulf Oil Products (In re Blanton Smith Corporation)*, 37 B.R. 303, 307 n. 6 (Bankr. M.D.Tenn.1984); *Eckles v. Pan American Marketing (In re Balducci Oil Company, Inc.)*, 33 B.R. 843, 846 (Bankr.D.Colo.1983); *Ford Motor Credit Company v. Ken Gardner Ford Sales, Inc.*, 23 B.R. 743, 746–747 (E.D.Tenn.1982);

Based on the stipulations submitted by the parties, the court is convinced that no basis exists for a § 547(c)(1) defense. Based upon fraudulent invoices, the defendant transferred to the debtor $53,114.83. Four days later, the debtor admitted that it had deceived the defendant and accordingly, paid the defendant $53,114.83. The transaction in question was clearly a situation in which the debtor had a change of heart and paid the defendant for funds it had wrongfully obtained. A contemporaneous exchange for new value was not intended by the parties and indeed, never occurred.

Finally, the defendant contends that it is entitled to the funds in question pursuant to 11 U.S.C. § 547(c)(2) (West 1979).[7] In order to establish a § 547(c)(2) exception, one of the key elements a de-fendant must establish is that the debt was incurred and payment was received within the *ordinary course of business.* In each case, the court must determine which transactions are within the scope of the debtor's normal business activity. *Cohen v. Kern (In re Kennesaw Mint, Inc.)*, 32 B.R. 799, 804–805 (Bankr.N.D.Ga.1983); *Ford Motor Credit Company v. Ken Gardner Ford Sales, Inc.*, 23 B.R. 743, 747 (E.D.Tenn.1982); *Weill v. Southern Credit Union (In re Bowen)*, 3 B.R. 617 (Bankr.E. D.Tenn.1980).

In the present case, the transfer in question is far from the ordinary business transaction contemplated by § 547(c)(2). When the debtor admitted to the defendant that it had received payments based on false invoices, the debtor was in effect notifying the defendant that it had departed from normal business procedures. To allow an exception under § 547(c)(2) in this case would be to sanction an activity by the debtor which appears to be ultra vires.

The court will accordingly enter an order GRANTING summary judgment to the trustee and requiring the defendant to turnover to the trustee preferential transfers in the amount of $53,114.83.

IT IS, THEREFORE, SO ORDERED.

---

6. 11 U.S.C. § 547(c)(1) (West 1979) provides in relevant part:
   "(c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was—
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
   (B) in fact a substantially contemporaneous exchange;...."

7. 11 U.S.C. § 547(c)(2) (West 1979) provides:
   "(c) The trustee may not avoid under this section a transfer—

. . . . .
   (2) to the extent that such transfer was—
   (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
   (B) made not later than 45 days after such debt was incurred;
   (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
   (D) made according to ordinary business terms;...."