**In re ERNIE CAUSEY FORD, INC., Debtor.**

**Kevin CAMPBELL, Trustee, Plaintiff,**

**v.**

**FORD MOTOR CREDIT, INC., Defendant.**

**Bankruptcy No. 83–01557.**
**Complaint No. 85–0026.**

United States Bankruptcy Court, D. South Carolina.

Dec. 3, 1985.

H. Flynn Griffin, Campbell, Griffin & Campbell, Walterboro, S.C., for plaintiff.

Peggy M. Chandler, Belk, Howard, Cobb & Chandler, P.A., Charleston, S.C., for defendant.

J. BRATTON DAVIS, Bankruptcy Judge.

The trustee is seeking to avoid payments made by Ernie Causey Ford, Inc. (debtor) to Ford Motor Credit, Inc. (FMC) on the ground that they are preferential transfers avoidable under 11 U.S.C. § 547(b).[1] FMC asserts that the payments come within the exception to § 547(b), as provided in § 547(c)(3), and are not avoidable.

### FACTS

On October 19, 1983, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*).

On November 13, 1979, the debtor purchased a Ford automobile dealership—the transaction was financed by FMC. On the same date, the debtor executed an agreement (the agreement) granting FMC a security interest in debtor's furniture, furnishings, fixtures, supplies, machinery and equipment, accounts, contract rights, chattel paper and general intangibles, and all personal property held for sale or lease in the ordinary course of business.

At the end of November, 1983, the balance due on the loan was $102,308.33.

Within 90 days immediately prior to filing its petition in bankruptcy, the debtor transferred, by check, $2,830.52 to FMC on account of the loan. The check indicated that $1,459. was to be applied to principal and $1,371.52 to interest from July 1, 1983 to July 31, 1983. The check was dated August 11, 1983 and was paid by the bank on August 15, 1983.

FMC established a wholesale line of credit in order to enable the debtor to purchase inventory. As security for all advances made under its line of credit, FMC retained a purchase money security interest in all motor vehicles and proceeds. Interest began to accrue when FMC paid Ford Motor Company for the vehicles bought by the debtor. Interest was calculated daily and billed monthly. Upon the sale of a vehicle, the debtor was required to forward to FMC, within three days, payment of the principal balance of the wholesale cost of the vehicle.

On August 23, 1983, the debtor transferred $5,494.16 to FMC in payment of July interest—this was paid by the bank on August 24, 1983.

On July 29, 1983, the debtor transferred $5,355.58 to FMC in payment of June interest—this was paid by the bank on July 29, 1983.

The trustee contends that the payment of $2,830.52 ($1,459. principal and $1,371.52 interest) pursuant to the agreement, and the payments of $5,494.16 and $5,355.58 on the line of credit were preferential transfers because they were made within 90 days before the date of filing of the petition for relief under the Bankruptcy Code; thus, voidable under § 547(b). FMC concedes that the payments were preferential under § 547(b), but argues that the payments were made in the ordinary course of business and not later than 45 days after the debt was incurred, thus, within the exception of § 547(c)(2).

### ISSUE

The court must decide whether the transfers are within the § 547(c)(2) exception.

### DISCUSSION

Section 547(c)(2) provides:

The trustee may not avoid under this section a transfer—

\*    \*    \*    \*    \*    \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee, and

---

1. Further references to the Bankruptcy Code are by section numbers only.

(D) made according to ordinary business terms.

The trustee and FMC having stipulated that the debt was incurred in the ordinary course of business and that it was paid in the ordinary course of business, according to ordinary business terms, the court must decide whether the transfer was made earlier or later than 45 days after the debt was incurred. That decision depends on when the interest debt was incurred. If the interest debt had been incurred at the time of the making of the loan—when the wholesale line of credit was established—the trustee is entitled to judgment. However, if the debt had been incurred on a continuing daily basis, over a period of time, the trustee would be entitled to avoid only those payments made outside the 45–day period.

Several courts, in considering the issue presently before this court, have distinguished between the date when the debt for principal is incurred and the date when the debt for interest is incurred. *See, In re Faller,* 42 B.R. 593 (Bankr.N.D.Ohio 1984); *In re R.A. Beck Builder, Inc.,* 34 B.R. 888 (Bankr.W.D.Pa.1983); *In re Ken Gardner Auto Sales,* 10 B.R. 632 (Bankr.E.D.Tenn. 1981), *aff'd,* 23 B.R. 743 (E.D.Tenn.1982); *In re Iowa Premium Service Co., Inc.,* 695 F.2d 1109 (8th Cir.1982).

Cases interpreting § 547(c)(2) hold that a debt is incurred on the date upon which the debtor first becomes legally bound to pay, a conclusion with which we agree.

There can be no doubt that IPSCO [the debtor] was not legally bound to pay interest when the note was executed; it had no obligation to pay interest until it used the money. IPSCO can be compared to a tenant who leases property; the tenant pays for the continued use of the property, not just for taking possession. Interest is simply rent for the use of money. IPSCO can also be compared to a customer of an electric utility. The customer agrees to pay for whatever electricity it uses, but the debt to the utility is not incurred until the resource is consumed. A customer does not incur a debt when it makes the original agreement with the utility. Likewise, IPSCO agreed to pay interest for the use it made of the money, but *the debt was not incurred until IPSCO actually used the money.* (Emphasis added). (Citations and footnotes omitted).

*Iowa Premium,* at 1111. *Accord, Faller, supra; Ken Gardner, supra; R.A. Beck, supra.*

■ This court agrees that "a debt for interest is incurred on the date when the interest accrues." *Faller* at 595.

■ Accordingly, in the case at bar such payments fall within the exception of § 547(c)(2) to the extent they were interest accrued within 45 days of the payments. Thus, all of the $1,371.52 payment made on the loan on August 11, 1983 for July is within the exception and not recoverable by the trustee.

■ The payment of $5,494.16 made on August 23, 1983 for July interest includes eight days' interest that accrued more than 45 days before payment. The payment of $5,355.58 which was made on July 27, 1983, for June interest includes 12 days interest that accrued more than 45 days before payment. As in *Ken Gardner,* the trustee has not shown the amount of the interest for those days, thus the court cannot grant the trustee a judgment therefor. The trustee is entitled to avoid the payment of $1,459. which is attributable to principal incurred before the 45–day period.

### ORDER

Therefore, it is ORDERED, ADJUDGED AND DECREED that the transfer of $1,459 to the defendant, Ford Motor Credit Company be, and it hereby is, declared void; that the plaintiff, Kevin Campbell, as trustee, have judgment against Ford Motor Credit Company in the amount of $1,459.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of the defendant, Ford Motor Credit, Inc. as to the remaining payments.