# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 19, 2019 Session

## TAMALA TEAGUE, AS SUCCESSOR PERSONAL REPRESENTATIVE OF THE ESTATE OF LOLA LEE DUGGAN v. GARNETT KIDD, ET AL.

**Appeal from the Chancery Court for Polk County**
**No. 2017-CV-25    Jere Bryant, Chancellor**

FILED

SEP 1 2 2019

Clerk of the Appellate Courts
Rec'd by_____

**No. E2019-00330-COA-R3-CV**

John W. McClarty, J., dissenting.

As noted in the majority's opinion, the first administrator[1] of the estate of Lola Lee Duggan sought "to recover funds unlawfully converted through fraud, false dealing and misapplication of trust by Defendant[s]." He requested "that a *Lien Lis Pendens* be placed against the real property acquired by Garnett and William Kidd ("the Kidds" or "Defendants")[2] in this cause to secure any judgment which may be obtain[ed] by the Estate." (Emphasis in original.). Despite praying "[t]hat [p]laintiff have such additional general and equitable relief to which it may be entitled upon the hearing of this cause," the administrator did not specifically seek the entry of an order declaring the existence of a constructive trust. Upon trial, appeal, and remand from this court, an amended final judgment was entered against Mrs. Kidd for $117,679 in damages and $79,052.48 in pre-judgment interest, for a total judgment of $196,731.48.[3] That judgment was not appealed by the successor administrator ("Plaintiff").[4]

Years later, Plaintiff filed the second complaint against Defendants, seeking to enforce a constructive trust to transfer legal title of the 132 acres of real estate to the estate. The trial court observed that because of the acts of Mrs. Kidd, "[a] trust would have arisen on the date the property was acquired which was February 22, 2001." Additionally, the court related that "[i]t is appropriate that this Court convert her to Trustee for the property, for the benefit of Ms. Duggan." The court noted that "the imposition of a construct[ive] trust . . . would be appropriate in this matter." However, the court declined to do so, citing the doctrine of res judicata.

---

[1]Donald Duggan, Lola Lee Duggan's son, was the initial administrator of the estate.
[2]Garnett Kidd is Donald Duggan's sister.
[3]This court dismissed all claims against William Kidd, finding that he owed no duty to Lola Lee Duggan.
[4]Donald Duggan died on August 28, 2010, and Tamala Teague was appointed as successor.

1

Plaintiff contends that the constructive trust arose on February 22, 2001, and that the trial court erred in finding that it has somehow ceased to exist. She relies on *State ex rel. Flowers v. Tenn. Coordinated Care Network*, No. M2003-01658-COA-R3-CV, 2005 WL 427990 (Tenn. Ct. App. Feb. 23, 2005)("*Flowers*"), a decision of this court in which we held that a constructive trust is established at the time of the wrongful act and not at the time a court declares it to exist.[5] *Id.* at *14. In *Flowers*, we noted as follows:

> Professor Scott in *Scott on Trusts*, insists the effective date of a constructive trust is when the asset is wrongfully acquired. He explains:
>
> Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises. . . . It has been suggested that the constructive trust does not arise until the defrauded person brings a suit in equity and the court decrees specific restitution. The notion seems to be that a constructive trust is created by the court and that it therefore does not arise until the court creates it by its decree. . . .
>
> There is no doubt that where the title to property is wrongfully acquired under such circumstances that the person acquiring it is under a duty to make restitution, the person entitled to restitution has such an interest in the property as to enable him to recover it . . . . This is true . . . before the person who was wronged has brought a proceeding to recover the property and long before the court has decreed restitution. The beneficial interest in the property is from the beginning in the person who has been wronged. The constructive trust arises from the situation in which he is entitled to the remedy of restitution, and it arises as soon as that situation is created. . . . It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when that duty is subsequently enforced.
>
> *Scott on Trusts* at § 462.4.

*Id.* at *12-13. The *Flowers* court observed that

---

[5]Admittedly, the Commissioner in *Flowers* amended her petition to include a claim for imposition of a constructive trust and moved for summary judgment on her constructive trust claim.

2

Professor Scott's view is not universally accepted. A difference of opinion exists as to the effective date of a constructive trust according to Bogert, *The Law of Trusts and Trustees*, § 472 (2d ed. 1978). The author explains, "Some courts have taken the position that the constructive trust arises at the time the property is wrongfully acquired, while other courts have stated that the trust arises only after the beneficiary exercises his election to seek a constructive trust and the court grants such relief, even though the defendant may be treated as a trustee from the date of his wrongful acquisition." There are a few bankruptcy cases arising in Tennessee which hold that constructive trusts do not come into existence until they are created by a court of equity; therefore, the effective date of the trust is the date the trust was created by the court. This rationale appears to be based on the premise that constructive trusts are judicially created, thus the effective date is when the court enters an order creating the trust. We respectfully disagree with the underlying premise of these cases. Consistent with Professor Scott, we find that constructive trusts are created not by the court but by the wrongful act of the constructive trustee whose duties as trustee emanate the instant of the wrongful transfer.

*Id.* at 13 (internal citations omitted).

Henry R. Gibson, as cited in *Flowers*, observed:

In a Court of Chancery *ought to be becomes is*; and whatever a party ought to do, or ought to have done, in reference to the property of another, will ordinarily be regarded *as done*. The rights of the parties will be adjudicated as though, in fact, it *had been done*. This maxim is far-reaching in its operation, and full of beneficent consequences; the doctrines and rules creating and defining equitable estates or interests being, in a great measure, derived from it. (emphasis supplied)

Henry R. Gibson, *Gibson's Suits in Chancery*, § 2.12 (Inman rev., 8th ed. 2004).

*Flowers*, 2005 WL 427990 at 13. As noted by Gibson,

If through the ingenuity and subtlety of the human mind bent on schemes of personal or pecuniary advantages, or intent on devices for aggrandizement, new remedies should be required to overcome the insidiousness of any sort of Machiavellianism, the Court of Chancery, operating in obedience to these maxims, will devise a remedy adequate to the emergency, and vindicate the beneficence and capacity of its inherent powers to do justice in any case, and to right every wrong, however intricate the case, however great the wrong, or however powerful the wrongdoer. The powers that lie dormant in these potent maxims will awaken as the necessities for their action and they will be found commensurate with every necessity.

Gibson at § 2.02.

*Flowers*, 2005 WL 427990 at 14.

In my view, the constructive trust already existed and enabled the court to reach the property belonging to the estate yet titled in and held by the Kidds. *See Holt v. Holt*, 995 S.W.2d 68, 71-72 (Tenn. 1999); *Akers v. Gillentine*, 191 Tenn. 35, 39, 231 S.W.2d 369, 371 (1948). The action at issue was simply a proceeding in equity to compel the constructive trustee to transfer the property to the estate, i.e., specific enforcement of the constructive trust. Plaintiff did not mention the prior litigation in the complaint; rather, she asked the trial court to "enforce the constructive trust in the subject real estate and to divest legal title out of the Defendants' names and vest legal title in the beneficiary of the constructive trust . . . ." It was not a second complaint "asserting the same cause of action as plaintiff's first complaint."

I concede that Tennessee has a long-standing tradition in upholding judgments. As the Tennessee Supreme Court has stated,

[t]he policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'. . . .

.... It is not material on this point whether the finding . . . was Right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had

4

been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

*Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn.1976) (internal citations omitted). I believe that the res judicata doctrine should not be invoked in situations where it defeats the ends of justice. *deCancino v. Eastern Airlines, Inc.*, 283 So.2d 97 (Fla.1973); *see also Universal Construction Co. v. City of Fort Lauderdale*, 68 So.2d 366, 369 (Fla.1953); *Greenfield v. Mather*, 194 P.2d 1, 8 (Cal. 1948); *Wallace v. Luxmoore*, 24 So.2d 302, 304 (Fla. 1946); *Flesche Hernandez v. Marsarm Corp.*, 613 So.2d 914 (Fla. Ct. App. 1992); *Hight v. Hight*, 67 Cal.App.3d 498, 136 Cal.Rptr. 685 (1977). Although I discern the need for finality and repose in litigation, recognize "that plaintiff still has a valid money judgment against Mrs. Kidd," and acknowledge that "[n]othing . . . prevents plaintiff from enforcing the money judgment by any manner authorized by law," I cannot accept a decision that allows a thief to profit from her actions. The complaint at issue alleged facts justifying relief and the motion to dismiss should have been denied.

Accordingly, I respectfully but earnestly dissent from the opinion of the court in this case.

JOHN W. MCCLARTY, JUDGE

5